# IN RE TAXES MAUI AGRICULTURAL COMPANY, LIMITED.

## No. 2238.

Argued March 21, 22, 23, 24 and Submitted March 25, 1938.        Decided May 23, 1938.

Banks and Peters, JJ., and Circuit Judge Metzger in Place of Coke, C. J., Disqualified.

516

OPINION OF THE COURT BY PETERS, J.

On January 1, 1934, a territorial statute existed (Sp. S. L. 1933, Act 9) levying an *ad valorem* tax upon all personal property within the Territory with certain exceptions

518

and exemptions with which we are not at the present concerned.

The law required every person owning or having the possession, custody or control of personal property, at the taxation period when thereto requested by the assessor of the taxation division in which the same was situated, to file upon forms prescribed by the tax commissioner and in the manner required by such forms a return of such personal property setting forth the description and location thereof.

Form No. 38

| ITEM OF PROPERTY (List separately as to each item thereof) | Column 1 Value used in determining income tax liability. (Total of Col. 2 and Col. 3) | Column 2 NON-TAXABLE (Explain) | Column 3 TAXABLE Column 1 minus Column 2. (Under provisions of Act 9 S.S. 1933) | Column 4 ASSESSOR'S VALUE (Do not use) |
|---|---|---|---|---|
| 13. RANCH ACCOUNT (Includes Meat Market). MEAT MARKET INVENTORY.... (Goods held for sale) Deductions: 15% deducted from inventory to give fair and reasonable value and to allow for deterioration, etc. | $ 3,261.97 | | | |
| 15% of $3,261.97...................... | | $ 489.30+ | $ 2,772.67 | $ 3,261.97 |
| 10. PAIA STORE ACCOUNT (as inventoried). (Including all branch stores). INVENTORY OF MERCHANDISE ON HAND............................... Deductions: Gasolene (tax paid) 1480 gal. 15% deducted from balance of inventory to give fair and reasonable value and to allow for obsolete and shopworn goods. | | 194,199.95 | | |
| 15% of $193,940.95................... | | 29,091.14+ | 164,849.81 | 194,199.95 |
| Total ................................................. | $ 197,461.92 | $ 29,839.44 | $ 167,622.48 | $ 197,461.92 |
| 11. PLANTATION SUPPLIES ACCOUNT (as inventoried). PLANTATION WAREHOUSE . Warehouse Stock—General .......... Lumber ......................................... Pump Spare Parts........................... Mill Spare Parts............................. Steam Plow Spare Parts................. Feed ........................................... 15% deducted from inventory to give fair and reasonable value and to allow for obsolete supplies. | $ 58,537.59 4,999.38 24,103.28 29,781.07 4,114.27 2,161.90 | | | $ 58,537.59 4,999.38 24,103.28 29,781.07 4,114.27 2,161.90 |
| 15% of $123,697.49..................... | | $ 18,554.62+ | $ 105,142.87 | |

The law also required that all personal property be assessed separately for each item thereof.

Pursuant to published notice given by the assessor of the second taxation division upon the order of the tax commissioner, the Maui Agricultural Company, Limited, hereinafter referred to as "the taxpayer," within the time required by law, filed a return of its personal property in the second taxation division.

Those portions of its return, the items of which later

| Form 38A ITEMS | Column 1 | Column 2 | Column 3 | Column 4 |
|---|---|---|---|---|
| **11. LIME KILN** | | | | |
| Quick Lime 170 tons 4.00 | 680.00 | | | 680.00 |
| Hydrated Lime 104 " 5.90 | 613.60 | | | 613.60 |
| Concrete Pipe, etc. manufactured | 2,169.25 | | | 2,169.25 |
| Kiln Supplies | 1,524.23 | | | 1,524.23 |
| 15% deducted from inventory to give fair and reasonable value and to allow for obsolete supplies and deterioration. | | | | |
| 15% of $4,987.08 | | 748.06+ | 4,239.02 | |
| Undisputed Items | 27,464.03 | | 27,464.03 | 27,464.03 |
| Total | $ 156,148.60 | $ 19,302.68 | $ 136,845.92 | $ 156,148.60 |
| **14. CEMENT PLANT** | | | | |
| Consisting of: Buildings, Lime Kiln, Grinding Machinery, Motors and Equipment | $ 10,534.96 | | | |
| Deductions: | | | | |
| Buildings | | $ 8,002.35— | | |
| Installation | | 379.89+ | $ 2,152.72 | $ 2,532.61 |
| **14. HYDRO-ELECTRIC PLANT** | | | | |
| Consisting of: | | | | |
| Buildings; Forebay & Penstock | | | | |
| 1—1400 H.P. Impulse Wheel | | | | |
| 1—100 K.W. Generator | | | | |
| 12750 ft. Pipe Line | | | | |
| 7—333 KVA Transformers | | | | |
| 1—800 H.P. Motor | | | | |
| Transformer Stations | | | | |
| Transmission Lines | | | | |
| Tunnels | | | | |
| Misc. Appliances & Equip. | 42,989.57 | | | |
| Deductions: | | | | |
| Buildings | | 3,484.52— | | |
| Forebay & Penstock | | 13,704.80— | | |
| Tunnels | | 2,551.59— | | |
| Pipe Lines | | 7,400.82+ | | |
| Installation | | 2,725.04+ | 13,122.80 | 23,248.66 |
| **15. MILL IMPROVEMENTS** | | | | |
| Consisting of: | | | | |
| Mill Buildings | | | | |
| Foundations & Install. Exp. | | | | |
| Wells & Water Development | | | | |
| 1 30 Roller Misc. & Appliances | | | | |
| 4 Mill Engines | | | | |
| 4 800 H.P. Sterling Boilers & Ftgs. | | | | |

came into dispute, with the corresponding assessments of the assessor, are quoted in the margin.[1] They are identified by form numbers 38 and 38A. The items are numbered according to the pages of the return in which they appear. The plus and minus signs opposite the deductions claimed in column 2 indicate which deductions the assessor in making his assessment respectively added to or subtracted from the net taxable value returned in column 3, in other words, what deductions he respectively disallowed or allowed. The blanket entries representing undisputed items and totals by classes or types of property are not quoted from the taxpayer's return but are included for the purpose of show-

| | | | | |
|---|---|---|---|---|
| 2 350 H.P. Badcuhousen Boilers & Ftgs.<br>1 1500 K.W. Turbine & Appurt.<br>1 5 cell Evaporator Unit<br>4 Vacuum Pans<br>2 Pre Evaporators<br>Water Supply Pipe Lines<br>20 Centrifugals<br>34 Crystallizers<br>2 Juice Strainers<br>2 Clarifiers<br>Elevators & Conveyors<br>8 Scales & Weighing Machs.<br>37 Pumps<br>55 Motors<br>4 Switch Boards<br>14 Tanks<br>6 Juice Heaters<br>2 Motor Driven Well Pumps<br>Furniture<br>Sundry Machinery<br>Electric Wiring .............................. | 814,684.88 | | | |
| **Deductions**<br>Buildings & Smoke Stack..............<br>Wells & Water Development........<br>Wiring Buildings ...........................<br>Installation ....................................... | | 79,811.86—<br>7,393.23—<br>833.29—<br>118,495.27+ | | |
| Accrued Obsolescence & Depreciation not recorded in books........ | | 136,200.48+ | 471,950.75 | 726,646.50 |
| **15. POWER PLANT**<br>Consisting of :<br>Buildings<br>1 1250 K.W. Generator<br>1 2500     ″      ″<br>1 Sterling Boiler & Ftgs.<br>Exciters Switch Board, etc.<br>Transformer Stations<br>Transmission Lines<br>Miscellaneous ................................... | $ 216,177.16 | | | |
| **Deductions**<br>Buildings ...........................................<br>Installation ....................................... | | $   25,030.52—<br>46,466.14+ | $ 144,680.50 | $ 191,146.64 |
| **16. PUMPS**<br>Consisting of the following : | | | | |

ing from what assessments the appeal was taken and the relation that the assessments appealed from bear to all the assessments made.

Also included in the taxpayer's return was a description of its personal property by class or type with the respective values claimed by it and the valuations respectively placed thereon by the assessor. This portion of its return is also quoted in the margin.[2] It is identified as form number 36.

The taxpayer on April 16, 1934, filed with the assessor of the second taxation division a notice of appeal from the assessment of its personal property to the divisional board

| | | | | |
|---|---|---|---|---|
| **Steam Pumps** | | | | |
| 4 Reidler Pumps with Boilers & Auxiliary Equipment | | | | |
| Bldgs. & Water Development | | | | |
| Pipelines | 50,173.01 | | | |
| Deductions: | | | | |
| Bldgs. & Water Dev. | | 6,521.66— | | |
| Pipeline | | 29,218.11+ | | |
| Smoke Stack | | 36.26— | 14,396.98 | 43,615.09 |
| **Pump Station No. 3** | | | | |
| 1 12x14 Centrif. Pump | 3,568.53 | | | |
| Deduction: | | | | |
| Installation | | 618.78+ | 2,949.75 | 3,568.53 |
| **Pump Station No. 6** | | | | |
| Bldgs.; Water Development | | | | |
| 14,177 ft. Pipeline | | | | |
| 1 12 M Centrif. Pump | | | | |
| 1 2,000 H.P. Steam Turbine | | | | |
| 2 800 H.P. Boilers | | | | |
| Misc. Instruments & | | | | |
| Appurtenances | 219,945.48 | | | |
| Deductions: | | | | |
| Buildings | | 7,474.97— | | |
| Water Development | | 11,876.07— | | |
| Pipe Lines | | 86,538.89+ | | |
| Installation | | 19,611.85+ | 94,443.70 | 200,594.44 |
| **Pump No. 7** | | | | |
| Bldgs.; Water Development | | | | |
| 1 16″ Centrif. Pump with Motor & Appurtenances | | | | |
| Transmission Line | | | | |
| Misc. Equipment | 96,930.40 | | | |
| Deductions: | | | | |
| Buildings | | 782.97— | | |
| Water Development | | 44,697.66— | | |
| Pipe Line | | 27,879.84+ | | |
| Installation | | 4,052.85+ | 19,517.08 | 51,449.77 |
| 17. **SHOPS** | | | | |
| Consisting of: | | | | |
| Buildings | | | | |
| 2 Planers | | | | |
| 3 Shapers | | | | |
| 5 Lathes | | | | |
| 5 Pipe Machines | | | | |
| 3 Welding  ″ | | | | |

of the second taxation division. A copy of the notice of appeal is included in the margin.[3]

It should be noted that the "items," "taxpayer's valuation" and "assessor's valuation" stated in the notice of appeal are the same as those contained in form 36 of the taxpayer's return, and the "assessor's valuation" for the respective classes or types of personal property set forth in the notice of appeal, similarly as set forth in form 36, are but the aggregates of the separate *en masse* assessments

| | | | | |
|---|---|---|---|---|
| 5 Grinding Machines<br>7 Drilling    "<br>11 Cranes & Hoists<br>1 Air Compressor<br>   Gear Cutters<br>17 Meters<br>Blacksmith Shop Equipment<br>Car Shop     "<br>Carpenter Shop   "<br>Foundry       "<br>Garage        "<br>Tin Shop      "<br>Misc.         " | | | | |
| Deductions:<br>Buildings ........................<br>Installation ...................... | | $ 35,195.67—<br>1,375.45+ | $ 26,133.51 | $ 27,508.96 |
| Undisputed Items ...................... | | | 244,020.99 | 244,020.99 |
| Total.................................. | | | $1,033,368.78 | $1,514,332.19 |
| (Form 38) | | | | |
| 10. FURNITURE, FIXTURES &<br>    EQUIPMENT ...................... | $ 15,380.75 | | | |
| Deductions:<br>Cost of Installing<br>  Refrigerator Plant ...................... | | 3,002.88+ | $ 12,377.87 | $ 15,380.75 |
| Undisputed Items ...................... | 20,477.61 | | 20,477.61 | 20,477.61 |
| Total ...................... | $ 35,858.36 | | $ 32,855.48 | $ 35,858.36 |
| 18. "GROWING CROPS" ACCOUNT<br>TOTAL COSTS allocated in accordance with Alexander & Baldwin, Ltd., accounting system, to future crops including all costs of 1934 crop (both harvested and unharvested). ...................... | $2,157,009.34 | | | |
| Deductions:<br>(1) M. A. Co. Ltd.'s proportion of depreciation on properties of East Maui Irrigation Co. Ltd. (a cooperative non-profit irrigation company owned by H. C. & S. Co. Ltd. and M. A. Co. Ltd. and operating its irrigation system for the benefit of its said stockholders) ...................... | | 79,396.61+ | | |

entered in form 38 and included in the respective classes and types of property itemized in form 36 and in the notice of appeal.

In the divisional board the taxpayer took a *pro forma* ruling against it and the assessment of the assessor was accordingly sustained. The taxpayer thereupon appealed to the tax appeal court of the Territory from the decision of the divisional board of review. A hearing was had before the tax appeal court and the valuations claimed by the taxpayer were sustained by that court. From a decision of the tax appeal court the assessor appealed to this court.

| | | | |
|---|---|---|---|
| (2) Harvesting and manufacturing costs of the portion of the 1934 crop harvested in 1933......... | 146,757.07— | | |
| (3) Direct field costs allotted to 1936 crop (no fields planted as of 1/1/34). ..................................... | 65,917.57+ | | |
| (4) "Sanitation", "Repairs", and "Sundry Accounts". ..................... | 546,838.88— | | |
| (5) Direct field costs of the portion of the 1934 Crop harvested in 1933 (2109.40 acres harvested out of total crop area of 4843 acres). 2109.40/4843 x 845,882.00 =.... | 368,429.36— | | |
| (6) Deduction of 30% on direct field costs of remainder of 1934 crop to arrive at a fair and reasonable and a uniform and equalized value for such remainder and to allow for losses to such remainder sustained by drought. 30% of (845,882.00—368,429.-36) = 30% of 477,452.64 = (Form 38A) | 143,235.79+ | | |
| 19. (7) Deduction of 10% on direct field costs of 1935 crop to arrive at a fair and reasonable and a uniform and equalized value for such crop and to allow for losses to such crop sustained by drought. 10% of 472,217.21...................... | 47,221.72+ | | |
| Remainder: Direct field costs of crops planted prior to 1/1/34 and to be harvested after 1/1/34 (adjusted as in [6] and [7] above). ................. | | 759,212.34 | |
| Total ................................................. | $2,157,009.34 | $1,397,797.00 | $ 759,212.34 | $1,094,984.03 |

| | |
|---|---|
| As Returned............................................................................................................. | $ 759,212.34 |
| Added: Depreciation on East Maui Irrigation Co. Properties............................ | 79,396.61 |
| Direct Field Costs allotted to 1936 crop....................................................... | 65,917.57 |
| 30% on direct field costs crop 1934................................................................ | 143,235.79 |
| 10% on direct field costs crop 1925................................................................ | 47,221.72 |
| | $1,094,984.03 |

Included in the assigned errors, upon which the appellant relies in this court, are certain assignments attacking the jurisdiction of the tax appeal court generally. These assignments of error were of such a serious nature that their determination prior to a consideration of the merits seemed advisable. The parties were accordingly requested to file additional briefs upon the jurisdictional questions involved. This has been done. The assessor in his brief also advanced, for the first time, additional specific objections

Form No. 36

ORIGINAL
Do Not Detach

**TERRITORY OF HAWAII**

**RETURN OF PERSONAL PROPERTY**

SUBJECT TO TAXATION UNDER THE PROVISIONS OF ACT 9, SP. SESS. 1933

**ON JANUARY 1st, 1934**

AND OWNED OR CONTROLLED BY:

MAUI AGRICULTURAL COMPANY, LIMITED
 c/o Alexander & Baldwin, Ltd.
  Honolulu, Hawaii

10346

DATE FILED
Jan 31 1934
Do Not Use

NATURE OF BUSINESS  Sugar Plantation   LOCATION  Makawao District, Maui

| ITEMS OF TAXABLE PERSONAL PROPERTY<br>See Instructions Re Supporting Schedules | Taxpayer's Valuation | Assessor's Valuation (Do Not Use) |
|---|---|---|
| 1   INVENTORIES: | $ | $ |
|     (a) Goods, Wares, Merchandise (Schedule 1A) | 167,622.48 | 197,461.92 |
|     (b) Raw Materials and Supplies (Schedule 1B) | 136,845.92 | 156,148.60 |
|     (c) Agricultural Products—Sugar (Schedule 1C) & Molasses | 20,554.60 | 20,554.60 |
|              Pineapples Canned | | |
|     (d) Live Stock (Schedule 1D) incl. harness & saddles | 58,278.00 | 58,278.00 |
| 2   MACHINERY AND EQUIPMENT (Schedule 2) | 1,033,368.78 | 1,514,332.19 |
| 3   BUSINESS FURNITURE AND FIXTURES (Schedule 3) | 32,855.48 | 35,858.36 |
| 4   GROWING CROPS (Schedule 4) | 759,212.34 | 1,094,984.03 |
| 5   Ships and Vessels including Sampans and Boats (Schedule 5) | | |
| 6   OTHER PERSONAL PROPERTY SUBJECT TO TAX (Sched. 6) | | |
|     (a) Calcutta Bags | | 22,388.35 |
|     (b) Camp Lighting | | 33,875.31 |
|     (c) | | |
|     (d) | | |
|                 TOTAL | $2,208,737.60 | $3,133,881.36 |

to the jurisdictional power of the tax appeal court to consider certain issues of law and fact presented by the taxpayer upon the hearing in that court.

This case at the present juncture resolves itself into the sole question of the extent to which this court may, upon an appeal to it by the assessor from the decision of

Form No. 46

115325—M.P.

## TAXPAYER'S NOTICE OF APPEAL

From

### PERSONAL PROPERTY TAX ASSESSMENT

Disagreeing with the valuation of our taxable Personal Property as of January 1, 1934, as set by the Tax Commissioner and/or the Assessor for the Second Taxation Division, We hereby appeal therefrom to the Board of Review for said Taxation Division.

A description of the property and the valuations placed thereon is as follows:

| ITEMS | Taxpayer's Valuation | Assessor's Valuation | Valuation by Board of Review or Tax Appeal Court |
|---|---|---|---|
| INVENTORIES: | $ | $ | $ |
| (a) Goods, Wares, Merchandise | 167,622.48 | 197,461.92 | 197,461.92 |
| (b) Raw Materials and Supplies | 136,845.92 | 156,148.60 | 156,148.60 |
| (c) Agricultural Products—Sugar & Molasses.... Pineapples Canned .... | 20,554.60 | 20,554.60 | 20,554.60 |
| (d) Live Stock incl. harness & saddles | 58,278.00 | 58,278.00 | 58,278.00 |
| MACHINERY AND EQUIPMENT | 1,033,368.78 | 1,514,332.19 | 1,514,332.19 |
| BUSINESS FURNITURE AND FIXTURES | 32,855.48 | 35,858.36 | 35,858.36 |
| GROWING CROPS | 759,212.34 | 1,094,984.03 | 1,094,984.03 |
| SHIPS AND VESSELS (incl. Sampans and Boats).... | | | |
| OTHER PERSONAL PROPERTY SUBJECT TO TAX | | | |
| (a) Calcutta Bags | | 22,388.35 | 22,388.35 |
| (b) Camp Lighting | | 33,875.31 | 33,875.31 |
| (c) | | | |
| TOTAL | $2,208,737.60 | $3,133,881.36 | $3,133,881.36 |

AMOUNT IN DISPUTE $925,143.76.

Costs of Appeal are deposited herewith in the sum of $.................................

Dated at Honolulu T. H.

April 16 1934

June 21 1934

(SGD) J. F. FOSS

Chairman Board of Review

MAUI AGRICULTURAL COMPANY, LIMITED

BY (SGD) JAS. F. MORGAN Asst. Treasurer
c/o Alexander & Baldwin, Ltd. Phone 4901.

the territorial tax appeal court, review the valuations placed by the assessor upon all the personal property of the taxpayer for taxation purposes as of January 1, 1934. The taxpayer's original appeal to the divisional board purports to be from the assessments of its personal property by classes or types of personal property and from the assessment thereof as a whole. The tax appeal court treated the appeal as a general one presenting for review the fair and reasonable value of all of the personal property of the taxpayer at the taxation date and considered the case accordingly. It affirmatively appears, however, from the return of the taxpayer and the assessment of the assessor supplemented by the proceedings had before the assessing officer upon assessment, that never at any time did the valuation at the taxation date of any separate item of the personal property of the taxpayer considered as a unit come into question between the taxpayer and the assessing officer. On the contrary, the property involved was bulk items, the valuations respectively placed thereon by the assessor were *en masse* and the valuations claimed by the taxpayer were lump sums and the only disputes between the taxpayer and the assessor and the only disagreement with the assessment arose from the following objections of the taxpayer: 1. That the second sentence of section 9 of Act 9 of the Special Session Laws of 1933 was unconstitutional; 2. that the personal property of the taxpayer should have been assessed for its fair and reasonable value and not pursuant to the provisions of the second sentence of section 9 of the Personal Property Tax Act; 3. that, excepting with respect to annually inventoried merchandise and supplies, no valuation of personal property was made by the taxpayer to determine income tax liability; 4. that the assessment included two items of non-taxable property; and 5. that the

assessor improperly disallowed and included in *en masse* assessments, made by him, specific items of deductions claimed by the taxpayer and set forth by it in column 2 of form 38 of its return.

A brief resume of the Personal Property Tax Law, as it existed at the time in question, will be of assistance in the construction of the particular sections of the Personal Property Tax Act (Sp. S. L. 1933, Act 9) and of the Real Property Tax Act (2d Sp. S. L. 1932, Act 40), that are involved herein, the sections of the latter with which we are concerned having been incorporated into the Personal Property Tax Act by appropriate references contained in section 13 of the latter Act.

The sixteenth legislature of the Territory undertook the revision of the territorial tax structure. Among other things it repealed the provisions of law levying an *ad valorem* tax upon property situated within the Territory. The law as it then existed applied to both real and personal property alike.

Sections 1315-1323, R. L. 1925, both inclusive, as amended, pertaining to the imposition of the tax and sections 1332-1387, as amended, having to do with the administration and enforcement of the tax, were repealed. As a substitute for the pre-existing tax upon real property evolved Act 40. No substitute for the pre-existing personal property tax was enacted. The Act contained not alone a substitute for the pre-existing tax upon real property, but also substitutes for the pre-existing administration and enforcement provisions. Moreover, whereas the pre-existing Property Tax Law required that in all cases where real and personal property or several classes or kinds or parcels of real or personal property respectively were combined and made the basis of an enterprise for profit, the combined

528

property forming such basis of such enterprise for profit should be assessed as a whole on its fair and reasonable aggregate value (R. L. 1925, § 1320, as amended), this feature was abandoned and the basis of valuation provided under the new Act was "fair and reasonable value" (2d Sp. S. L. 1932, Act 40, §§ 21, 25). Among the new administrative features was the creation of the office of tax commissioner. It also provided a new setup for appeals from assessments; divisional boards of review and a tax appeal court were created to review assessments. Upon the boards of review was conferred the power to hear disputes between the assessor and taxpayer in all cases in which appeals had been taken, to allow or disallow exemptions pursuant to law whether or not previously allowed or disallowed by the assessor and to increase or lower any assessment. The tax appeal court was also a reviewing body to which an appeal lay from the decision of a board of review by either the taxpayer or the assessor. The tax appeal court was clothed with all the powers of a court of record with respect to matters within its jurisdiction and was authorized to hear and determine appeals thereto from decisions of the boards of review, or directly from assessments of the assessor. The supreme court of the Territory similarly as theretofore was the court of last resort except as appeals might lie to the ninth circuit court of appeals. As heretofore stated, the sixteenth legislature expired without enacting any law imposing a tax upon personal property, but this form of tax was revived by its successor, the seventeenth legislature, sitting in special session in 1933. By Act 9 of that session an *ad valorem* tax was imposed upon all personal property within the Territory effective January 1, 1934. By section 13 of the Act, all provisions of the Real Property Tax Act, not inapplicable and not inconsistent with

its provisions (including, among other things, and without prejudice to the generality of the language employed, provisions relating to the assessment, payment or collection of taxes, delinquent and other penalties, the rights, powers and duties of the commissioner and/or treasurer and/or tax collectors, the rights, duties and liabilities of taxpayers, methods of accounting in taxable year or other taxable years, returns, assessments of unreturned or omitted property, limitation periods, enforcement of attendance of witnesses and production of evidence and examination of witnesses and records, appeals and/or other adjustments, the effect of assessments, tax books, lists and other official tax records as evidence, delinquent and other penalties, civil and criminal, and particularly including the provisions relating to the powers and duties of the commissioner), were thereby made applicable to and with respect to assessments under, and taxes imposed by, and collection of taxes under the Act. It was also therein provided that the terms "property" or "real property" whenever used in said Real Property Tax Act, unless the context clearly otherwise indicated, should mean and include "personal property" in so far as the provisions of the Real Property Tax Act were incorporated in the Act.

The personal property tax is an annual one levied each year as of January 1. The levy was "upon the basis of valuations determined in the manner and at the time provided in this Act." Id. § 8. The Act itself, however, contained no administrative provisions as to the manner or time of determining valuations. The administrative means provided by the Real Property Tax Act (2d Sp. S. L. 1932, Act 40) for determining valuations of real property, not inapplicable nor inconsistent therewith, were incorporated. The Real Property Tax Act, similarly as the Personal Property Tax Act, provided that taxes be levied "upon the basis

of valuations determined in the manner and at the time provided in this Act." 2d Sp. S. L. 1932, Act 40, § 25. (See also § 21.) Hence the administrative provisions of the Real Property Tax Law relative to the manner and time of determining valuations of real property harmonize with the provisions of the Personal Property Tax Law upon the same subject.

The provisions of the Real Property Tax Act defining the rights, powers and duties of the tax commissioner, not inapplicable nor inconsistent with the provisions of the Personal Property Tax Act, were also incorporated in the latter Act. (Sp. S. L. 1933, Act 9, § 13.) By the Real Property Tax Law there was imposed upon the tax commissioner the duty of assessing real property and "to make any other assessment by law required to be made by him." 2d Sp. S. L. 1932, Act 40, § 18. Taxation divisions are also created (id. § 2) and for each taxation division assessors and assistant assessors are provided for the correct and full assessment of property for taxation within their respective divisions subject to the supervision and control of the tax commissioner. (Id. § 19.)

The administrative means provided for determining valuations are two: one, returns to be filed by the taxpayer when and if ordered by the tax commissioner upon forms prescribed by him and in the manner required by such forms (id. § 28), the other, investigatorial powers granted the commissioner and his assessors and assistants enabling him and them to obtain all information that might in any manner be of aid in arriving at the valuation of property. (Id. § 18, pars. 3, 9.) It is required that the taxpayer's return be under oath and set forth the "description and location" of all property belonging to him or of which he had possession, custody or control on the taxation date. (Id. § 28.) If and when returns are required under the

provisions of the Act and any person shall refuse or neglect to make such returns or shall decline to take oath to the accuracy thereof or shall omit any property from a return the assessor is required to make an assessment according to the best information available. (Id. § 32.) And in any such case a penalty of ten per cent is imposed to be added by the assessor to the amount of any assessment made by him, which penalty becomes a part of the assessment. No such penalty may be imposed however where the failure to assess or tax property was not due to the refusal or neglect of the owner to return the same. (Id. § 32.) The commissioner and his assessors and assistants are authorized to examine the books and papers of account of any person and to require such person to appear before them and to interrogate such person under oath or otherwise for the purpose of enabling them to obtain all information that would in any manner aid them in arriving at the valuation of the property. (Id. § 18, pars. 3, 9.) Further, in the event any person declines to take oath to the accuracy of his return, the commissioner, his assessors and assistants may make an assessment according to the best information available.

Under the provisions of the Personal Property Tax Law all personal property must be assessed "separately for each item thereof for its fair and reasonable value." Sp. S. L. 1933, Act 9, § 3. It is also provided, however: "In all cases where, due to the provisions of any other taxing statute, Federal or territorial, a valuation of personal property taxable under the provisions of this Act is used in the determination of tax liability under such other statute such valuation shall be used by the tax commissioner as the fair and reasonable value of such property within the meaning of this Act; provided, that when such valuation of personal property is made under both a Federal and a territorial statute, and a different valuation is made under each, the

higher of such valuations shall be used to determine such fair and reasonable value for the purposes of this Act." Id. § 9.

Personal property under the then existing law was taxed each year at such rate per centum upon its fair and reasonable value as fixed and determined as the average rate upon real property for that year, for the various counties and city and county. (Id. §§ 8-9.) It was incumbent upon the officers thereto appointed to determine the tax rate that would obtain in the various counties and city and county on or before May 10.

The Personal Property Tax Act contains no provisions for notice of assessments or for the preparation of assessment lists. The provisions of the Real Property Tax Law were made applicable. In the latter Act it provides that each year on or before April 1 the assessor of each division shall give notice of the assessments under the Act in his division for such year against each known owner by personal delivery to such owner of, or by mailing to him on or before said date, a written notice describing briefly the property involved and setting forth the valuation placed upon the same, determined pursuant to the provisions of the Act, the exemption, if any, allowed or denied as the case may be, and the net taxable value of such property. (2d Sp. S. L. 1932, Act 40, § 37.) The Act also provides that each year on or before April 30, the commissioner shall prepare or cause to be prepared from the records of taxable properties maintained in each division a list of all assessments made for each district in such division, which list shall be signed, sworn to by the person preparing the same and filed in triplicate in the commissioner's office. Such assessment lists showing valuations of property, amounts of exemptions allowed in each case and net taxable value shall be signed, sworn to by the person preparing the same and filed in duplicate in the commissioner's office. Such

assessment lists showing valuations of property, amounts of exemptions allowed in each case and net taxable values shall be the lists in accordance with which taxes shall be collected, subject only to changes made by any court or other tribunal having jurisdiction where appeals from assessments have been duly taken and prosecuted to final determination. (Id. § 33.) It is there also provided that, except as specifically provided in the Act, no changes in, additions to, or deductions from, such assessments shall thereafter be made except to add thereto property and/or taxes which may have been omitted therefrom, or to deduct therefrom adjustments on account of duplicate assessments and clerical errors, such as transposition in figures, typographical errors and errors in calculation (id. § 33) ; that there shall be noted upon such lists all appeals taken for such year and the amounts involved in each case. (Id. § 33.)

The Personal Property Tax Act also incorporates by reference the provisions of the Real Property Tax Law in respect to appeals. Divisional boards of review and a tax appeal court are created by the Real Property Tax Law. (Id. §§ 39, 42.) Any taxpayer deeming himself aggrieved by any "assessment" may, pursuant to the provisions of section 38, appeal therefrom to the divisional board of review for the division in which the property involved is situated or may appeal direct to the tax appeal court. The appeal in either case must be taken and perfected on or before April 20. The powers and duties of divisional boards and the tax appeal court are set forth in sections 40 and 43 respectively. Appeals lie to the tax appeal court from decisions of boards of review (id. § 41) and any taxpayer aggrieved or the assessor may appeal to the supreme court from the decision of the tax appeal court. (Id. § 51.) Particular provisions permitting special appeals under conditions not obtaining herein are contained in section 32. The provisions of law pertaining to appeals generally are con-

tained in sections 38 to 56, both inclusive, as amended.

The ultimate solution of the question of how far this court may review the valuations placed by the assessor upon the personal property of the taxpayer for taxation purposes is to be found in the language of section 3 of the Personal Property Tax Act requiring that all personal property be "assessed separately for each item thereof." For accordingly as this language is construed depends the appellate power of the appropriate body provided "to increase or lower any assessment" or "to allow or disallow exemptions according to law." In our opinion the language quoted from section 3 of the Personal Property Tax Act is free from ambiguity and expresses as clearly as the English language permits the legislative intention that the value of personal property be determined for taxation purposes by determining the value of each item thereof as a separate unit.

A method of determining the value of personal property which fails to take into consideration the respective values of its components is logically inconceivable. And this is so whether the term "personal property" has reference to personal property in a generic sense or to kinds, classes or types of personal property naturally or artificially classified. The basis of valuation is the same. The value of the unit controls.

The term "personal property" is a strictly technical one. The Personal Property Tax Act does not attempt to define the term further than it provides what the term shall mean and include and what shall be excluded from taxation. It provides by section 2 thereof that the term "personal property" whenever used in the Act shall mean and include "all goods, chattels, wares and merchandise, machinery, ships or vessels whether at home or abroad, growing crops, animals and all other tangible property" not included within the definition of real property as the same is defined in

the Real Property Tax Law. The exclusions are immaterial to our consideration.

"Goods" and "chattels" are general terms descriptive of classes of personal property included respectively in those terms. "Wares" and "merchandise" are also general terms but descriptive of particular classes of "goods" and "chattels"; viz., those purchased by merchants for resale. "Machinery," "ships," "growing crops," "animals" are general names applied to particular kinds, classes or types of personal property. Neither the meaning nor the concepts of any of these terms are synonymous with the word "item." "Item" is not a general term. It is not a descriptive term. On the contrary, it refers to a separate, particular, single detail of a kind, class or type. The statute emphasizes the sense in which the term "item" is used by qualifying it by the adjective "each." Again the meaning of the words "each item" is further emphasized in the statute by the presence of the adverb "separately" qualifying the verb "assess." The sense in which the word "item" is used in the statute must not be confused with the meaning of the term when applied to the contents of accounts. One of the ordinarily accepted meanings of the word "item" is an entry included in an account. Irrespective of the character of an account, the entries therein are referred to as "items." However general or particular be the nomenclature or however detailed or summative be the amounts, any entry contained in the account is nonetheless referred to as an "item." The statute however uses the term "item" in respect to the assessment of personal property and not to accounts. The term "item" has reference to the details of that property; each separate detail. The term "goods, wares, merchandise" may properly be referred to as "item" in an account. The word could hardly be referred to however as an item of personal property. It simply describes a kind or class of personal property.

. The word "assess" in its primary sense means "to apportion or fix the amount of a tax to be paid or contributed; * * * to adjust or fix the proportion of a tax which each person of several liable to it has to pay; * * * to set, fix, or charge a certain sum to each taxpayer." 5 C. J., T. Assess, § 2, p. 813. In its secondary or derivative sense "assess" means "to place a value on property for the purpose of forming the basis upon which a tax is to be computed." Id. It is in the latter sense that the word "assess" is used in section 3 of the Personal Property Tax Act. The provisions of the Personal Property Tax Act and those of the Real Property Tax Act incorporated therein demonstrate conclusively that the words "assess" and "assessment" have reference to valuation and not to a tax. Sections 3, 8 and 9 of the Personal Property Tax Act are concerned with the determination of valuation. Not alone the provisions of the Real Property Tax Act, incorporated by reference into the Personal Property Tax Act, but also those that apply solely to the assessment of real property are instructive. The purpose of the investigatory powers conferred upon the tax commissioner is to "aid him in arriving at the valuation of any taxable * * * property." 2d Sp. S. L. 1932, § 18, par. 3. The levy upon real property is couched in the same language as the levy upon personal property and is recited to be upon the basis of valuations determined. (Id. § 25.) In the same section, in referring to the four-year tax cycle therein provided, it is required that the "valuation fixed by the assessment * * * for the first year * * * shall continue to be used as the basis for taxation * * * for such four-year period." Section 26, similarly as in the Personal Property Tax Act, provides that it shall be the duty of the commissioner "to cause to be determined and assessed the value of all taxable real property" and sets forth the manner of making assessments and the subjects of consideration in connection therewith. The method of

computing the tax rate on real property is set forth in section 21 and for all practical purposes it may be said that the rate is determined by territorial and county and city and county needs computed upon the aggregate of real property "as assessed." The rate of tax upon personal property by section 1 of the Act was determined upon the same basis except that it is an average rate. (Sp. S. L. 1933, Act 9, § 1.) If the substantive administrative provisions of the two tax Acts were not enough to indicate the sense in which the word "assessment" is used in section 3 of the Personal Property Tax Act the statutory time limitations placed upon the different procedural steps involved in assessment and appeals are conclusive. By section 33 of the Real Property Tax Act, the assessment lists close April 30. By section 38, the time for appeals from assessments expires April 20. The time limitation upon the determination of the real property tax rate is May 10. Obviously up to the time that the rate is fixed valuation alone marks the exercise by the assessor of his official duties. Hence it may be said that the determination by the assessor of the fair and reasonable value of personal property subject to taxation and its official recordation by him constitutes the "assessment" as that term is used in section 3 of the Personal Property Tax Act.

The taxpayer contends that the word "item" as used in section 3 of the Personal Property Tax Act is a relative term and has reference to bulk items as well as separate items depending upon the character of the property subject to assessment; that section 5 of that Act expressly requires that personal property be assessed in its "entirety" and that by administrative and juridical construction of similar language contained in previous tax laws, the word "item" has acquired the meaning ascribed to it by the taxpayer. To these contentions we cannot agree. The definition of "personal property" is marked by the infinite variety of

property included in that term and *en masse* assessments are impossible without taking into consideration the value of the components of the mass assessed. It would be impossible to assess "goods," "wares," "merchandise" or "raw materials and supplies" without taking into consideration the valuation of each article separately included in the classes or types of personal property described. The same observation holds good for "machinery and equipment," "business furniture and fixtures" and "growing crops."

Moreover, the purpose of the requirement that personal property be assessed separately as to each item thereof militates against *en masse* assessments. The requirement is for the benefit of the taxpayer as well as the taxing authorities. *En masse* assessments of items descriptive of a class or type of personal property foreclose subsequent assessment of omitted property and encourage tax evasion. Where *en masse* assessments are made of more than one separate item, no record is preserved of the valuation of the separate items of the property included in the mass assessment. At the same time, the taxpayer has no means of knowing what property has been overassessed and how its value has been determined. He is left in complete darkness as to the cause of any overvaluation appearing in the *en masse* assessment. Again, where, as here, under the law certain personal property is excluded from taxation, if property is not assessed separately for each item thereof, it is impossible for the taxpayer to determine whether or not the assessment of excluded property is included. Not the least of the infirmities inherent in *en masse* assessments are the restrictions imposed upon the scope of review in the event of appeal. Where the property included in an *en masse* assessment has not been assessed separately for each item thereof and the taxpayer appeals from such *en masse* assessment, there is not thereby presented to the appellate tribunal any dispute involving the valuation of any sepa-

rate item of personal property included in the *en masse* assessment but a dispute involving the assessment as a whole. This will be discussed more at length at the appropriate place.

Nor does the language of section 5 of the Personal Property Tax Act militate against our conclusion. After providing that "the personal property shall be assessed in its entirety to the owner or owners thereof" the section concludes with the following language: "For the purposes of this Act, life tenants, executors, administrators, trustees, guardians or other fiduciaries and lessees holding under any government lease or license shall be considered as owners during the time any personal property is held or controlled by them as such." The language of section 5 of the Personal Property Tax Act is similar to that of section 22 of the Real Property Tax Act and is of similar import. The word "entirety" as used in the former Act does not refer to personal property in its physical sense but to the ownership thereof for assessment purposes. The assessment of personal property for each item thereof is not inconsistent with its assessment against all the owners, if there be more than one, or an assessment against a life tenant or persons holding or controlling property in a fiduciary capacity, or lessees holding under a government lease or license.

The claim that the word "item" has received a departmental construction is specious to say the least. The Personal Property Tax Act was approved by the governor on December 11, 1933, and its effective date was January 1, 1934. The Personal Property Tax Law of which it was a successor was included in the Property Tax Law which referred to real and personal property alike and while it is true that the previously existing law (R. L. 1925, § 1320, as amended), provided that "all real and personal property and the interests of any person in any real or personal

property shall be assessed separately as to each item thereof," the proviso included in the section heretofore referred to expressly provides that where real and personal property or several classes or kinds or parcels of real or personal property, respectively, are combined and made the basis of an enterprise for profit, the combined property, forming such basis of such enterprise for profit, shall be assessed as a whole on its fair and reasonable aggregate value. This proviso was consistent with the other provisions of the pre-existing Property Tax Law in respect to returns requiring a statement of the "aggregate value" of the property returned. (R. L. 1925, § 1334, as amended.) The proviso of section 1320, *supra,* was mandatory. (*Inter-Island Steam Nav. Co.* v. *Shaw,* 10 Haw. 624, 625.) The change in the manner of assessment brought about by chapter 51, L. 1896, of which sections 1320, 1334 and 1342 were a part, in respect to real and personal property combined and made the basis of an enterprise for profit, is too well-known to require discussion here. By the repeal of the former Property Tax Law and the enactment of the Real Property Tax Act of 1932 and the Personal Property Tax Act of 1933 the assessment in the aggregate of property combined and made the basis of an enterprise for profit was discontinued. Neither real nor personal property under the present law is assessed in relation to other property. Valuation is considered separately, disassociated from other property. Hence it can hardly be said that the construction placed by the taxing authorities upon the provisions of section 1320, as amended, *supra,* that "all real and personal property * * * be assessed separately as to each item thereof" serves any useful purpose in the determination of the construction to be placed upon section 3 of the present Personal Property Tax Act.

Nor do we find in any of the decisions of this court to which our attention has been directed any language even

intimating, much less holding, that to the word "item" as employed in the former Property Tax Law was attributed the meaning for which the taxpayer contends. In every case cited, with the exception of *May & Co.* v. *Assessor,* 14 Haw. 639, the property of the taxpayer involved was assessed in gross as an enterprise for profit. In *May & Co.* v. *Assessor, supra,* the question involved was the sufficiency of the taxpayer's return. The character of the assessment did not come in question. While this court from time to time has referred in tax cases before it under the former law to "items" of property the term apparently was employed by way of reference and not to indicate the character of an assessment.

The former statute required, in cases where property was combined and made the basis of an enterprise for profit, that such property be assessed for its fair and reasonable aggregate value. And if, as the references to items in former decisions of this court seem to indicate, the returns in the cases under review were marked by the paucity or generality of the description of the property returned, those cases might be of authoritative value as interpretive of the previously existing provisions of law pertaining to returns but certainly are of no assistance in construing the provisions of section 3 of the Personal Property Tax Act which is confined to assessments.

The distinction between assessment by items and assessments in gross was observed in *Re Taxes Onomea Sugar Co.,* 25 Haw. 278, where Mr. Justice Kemp, speaking for the court, said : "The assessment in each case is of an enterprise for profit and is to be governed by the rules laid down in the above statute for taxing an enterprise for profit as distinguished from the taxation of separate items of real and personal property."

A discussion of the incidents of the statutory remedy provided for the correction of assessments of personal prop-

erty is next in order. As heretofore pointed out, the general provisions of the law permitting and regulating appeals from personal property assessments are contained in sections 38-56, Act 40, 2d Sp. S. L. 1932, as amended. Though part of the Real Property Tax Law, they were incorporated into the Personal Property Tax Act. (Sp. S. L. 1933, Act 9, § 13.)

Section 38 is quoted in the margin.[4]

The right to appeal from *ad valorem* property assessments is purely statutory. The aggrieved taxpayer is not entitled to appeal as of right. It is not essential to his rights that he be afforded administrative or judicial review. Provided the law pertaining to assessments does not deny due process, it is within the discretion of the legislature to grant or withhold the right of appeal. Sections 32 and 37 provide

---

[4] 2d Sp. S. L. 1932, Act 40, § 38: "Appeal from assessment, how made. Any taxpayer who may deem himself aggrieved by any assessment made by the assessor, or by the assessor's refusal to re-assess any property under the terms of Section 25 hereof, may appeal from such assessment or from such refusal to the board of review for the division in which the property involved is situated, on lodging with the assessor, on or before April 20 of the assessment year, a notice of such appeal in writing. Any notice, however informal, stating disagreement with the assessment shall be sufficient.

"The assessor shall prepare such notice of appeal upon request of such taxpayer. Such taxpayer may, however, appeal from the assessment or from such refusal directly to the tax appeal court by the filing, on or before April 20 of the assessment year, of written notice of appeal in the office of the tax appeal court and the payment to such court of costs in the amount fixed by Section 49. The taxpayer shall also file a copy of such notice of appeal in the assessor's office.

"Such notice shall set forth the following:

(a) A description of the property involved and the valuation placed thereon by the assessor.

(b) The valuation claimed by the taxpayer.

(c) A copy of the taxpayer's return, if any has been filed.

"Such appeal shall be deemed to have been taken in time if the notice thereof and costs and the copy of such notice shall have been deposited in the mail, postage prepaid, properly addressed to the tax appeal court and the assessor, respectively, on or before said date."

due process. Moreover, the right if granted may be made subject to such regulations and limitations as the legislature in its discretion may prescribe.

The appeal from assessments accorded aggrieved taxpayers is not an appeal in its technical sense as a proceeding by which a cause is transferred from a lower to an appellate court and tried anew and finally determined as though it had not been tried before and without reference to the conclusion of the inferior court. It is merely a review of an assessment to the extent of the disagreement existing between the taxpayer and the assessor in respect thereto. The intermediate appellate bodies are not assessing bodies. They are appellate bodies. They are not courts. They have neither the power to enter judgments nor to enforce them. They are merely administrative bodies provided to give relief within the jurisdiction conferred upon them against erroneous assessments where the assessing officer has jurisdiction to assess.

Nor is an appeal from an assessment a general appeal as that term is generally understood. The appeal is restricted and limited to those matters in respect to which the taxpayer is legally entitled to complain and the appropriate appellate body to review. The statutory requisites of the transfer of an assessment for review indicate in themselves that the only issues that may be presented to either appellate body for review are those affecting valuation or exemption. Upon an appeal from an assessment to the board of review the notice of appeal, though informal, must state the "disagreement with the assessment." Where the assessor has jurisdiction to assess, the only possible subjects of "disagreement" are valuation and exemption. Upon an appeal from an assessment direct to the tax appeal court the notice of appeal must set forth the property involved, the valuation placed thereon by the assessor and the valuation claimed by the taxpayer. These requirements in them-

selves indicate the subject or subjects of the "disputes" presented for review. The property involved, the valuation placed thereon by the assessor and the valuation claimed by the taxpayer both define and limit the subjects of "disputes." The notice of appeal takes the place of an assignment of error. Whether the appeal be to the divisional board of review or to the tax appeal court, the notice of appeal defines and limits the issues presented for review. To the "disagreement" with the assessment stated on the one hand and the differences in valuation set forth on the other, the scope of review is confined.

Section 40, defining the powers and duties of boards of review, and section 43, defining the powers and duties of the tax appeal court, are quoted in the margin.[5] From an analysis of the sections quoted the conclusion is inescapable that they are mere statutory administrative tribunals of special and limited jurisdiction. The powers conferred and the duties imposed upon them are purely statutory. They possess no inherent powers. And the statutes of their creation mark the extent and limitations of their jurisdiction. The import of the limitations placed by section 40 upon the powers of boards of review is obvious. "To allow or dis-

---

[5] 2d Sp. S. L. 1932, Act 40, § 40. "Duties, powers. The board of review for each division shall hear informally all disputes between the assessor and taxpayer in all cases in which appeals have been taken. There shall be no written record of such proceedings. Each board shall hold public meetings at some central location in its taxation division, commencing not later than April 20 of each year and shall hear, as speedily as possible, all appeals presented for each year. Each board shall have power to allow or disallow exemptions pursuant to law whether or not previously allowed or disallowed by the assessor and to increase or lower any assessment. Such board shall file with the assessor concerned its decision in writing on each appeal decided by it, and a certified copy thereof shall be furnished by the assessor forthwith to the taxpayer concerned by delivery thereof to him, or by mailing the same addressed to him at his last known place of residence.

"Each board and each member thereof shall have the power to subpoena witnesses, administer oaths, examine books and records and hear

allow exemptions pursuant to law * * * and to increase or lower any assessment" concerns but exemptions and valuation. Similarly the provisions of section 43 in respect to the tax appeal court. Though the latter is constituted as and clothed with the powers of a court of record in the exercise of such powers, it is confined to "matters within its jurisdiction." The scope of review upon an appeal from an assessment is limited to the powers expressly or by necessary implication conferred upon the appellate bodies and then only to the extent of the issues framed by the notice of appeal.

By section 41 appeals are allowed to the tax appeal court from the decisions of the boards of review. By section 51 any taxpayer aggrieved, or the assessor, may appeal to this court from the decision of the tax appeal court. But while these appeals so respectively granted are general appeals their scope is limited by the issues as originally framed by the notice of appeal. A taxpayer's notice of appeal to the tax appeal court from the decision of a divisional board containing additional grounds of review cannot enlarge the issues originally framed by the notice of appeal. Despite the fact that the tax appeal court is created a court

and take evidence in relation to any subject pending before the board. Assessments for the same year upon other similar property situated in the Territory shall be receivable in evidence upon the hearing. The circuit courts shall have the power upon request of such boards to enforce by proper proceedings the attendance of witnesses and the giving of testimony by them, and the production of books, records and papers at the hearings of such boards."

Section 43. "Tax appeal court, powers, duties. The tax appeal court shall be, and have all the powers of, a court of record with respect to matters within its jurisdiction, and shall hear and determine appeals thereto from the boards of review of the various divisions. Action by the tax appeal court shall supersede action by a board of review when in conflict or inconsistent therewith. The court may meet at such times during the year and at such places in the Territory from time to time as shall be deemed advisable to carry out its work. Said court, with the approval of the supreme court of the Territory, shall adopt and use, and with such approval, may change from time to time, an official seal."

of record, and this court has broad appellate powers, it does not mean that either the tax appeal court or this court in any case originating upon an appeal from an assessment has any greater jurisdiction than may be exercised by a divisional board and then only to the extent of the issues raised by the original notice of appeal. While the appeals permitted from the divisional boards to the tax appeal court and from the latter court to this court are general appeals, the issues remain the same as formulated upon the appeal of the taxpayer from the assessment irrespective of whether such appeal was to the divisional board or direct to the tax appeal court, except of course as the issues may have been narrowed during the course of successive appeals. (See *Knox* v. *L. N. Dantzler Lumber Co.,* 148 Miss. 834, 114 So. 873; *Davis* v. *The City of Clinton,* 55 Iowa 549, 8 N. W. 423; *Board of Com'rs* v. *Denver Union Water Co.,* 32 Colo. 382, 76 Pac. 1060; *State* v. *Sloss-Sheffield Steel & Iron Co.,* 162 Ala. 234, 50 So. 366; *Chas. R. Bostick* v. *Board of County Commissioners of Noble Co.,* 19 Okla. 92, 91 Pac. 1125, 1127.) A direct appeal from an assessment to the tax appeal court attains no different status than had it been prosecuted originally by way of the intermediate divisional board.

Finally as to the scope of review upon a statutory appeal from an assessment. The meaning to be attached to the noun "assessment" as contained in section 38 of the Real Property Tax Act is the same as the meaning attributable to the verb "assess" as used in section 3 of the Personal Property Tax Act. Similarly as to the meaning of the word "assessment" as used in section 38 of the Real Property Tax Act. The assessment from which an aggrieved taxpayer may take an appeal is not a tax but the valuation determined by the assessing officer of the personal property to which the assessment refers. In both sections 38 and 40, similarly as elsewhere employed in defining the powers and

duties of assessing officers, the term "assessment" has reference to valuations to which, for the determination of the tax, the rate otherwise ascertained is applied.

Hence it is that to "assess" is to determine valuation and an "assessment" is complete where the valuation determined is officially recorded. In the instant case the valuations determined by the assessing officer were recorded by him upon the taxpayer's return. The valuations so recorded in the return of the taxpayer in contemplation of law are the "assessments" of the personal property of the taxpayer to which they respectively relate.

The term "exemptions" as used in section 40 of the Real Property Tax Act clearly refers to statutory exemptions and not to immunities resulting from the situs or legal status of personal property otherwise taxable. The qualification of the word "exemptions" the object of the prepositional phrase "to allow or disallow" by the adverbial phrase "pursuant to law whether or not previously allowed or disallowed by the assessor" so clearly defines the sense in which the word "exemptions" is used that further elucidation is superfluous.

Holding as we do that the statutory requirement contained in section 3 of the Personal Property Tax Act applies to each item of personal property considered as a unit, it necessarily follows that where assessments are not made in conformity with the provisions of the statute but on the contrary are made *en masse* and an appeal is taken from an *en masse* assessment there is not thereby presented to the appellate body for review any question of the overvaluation of any unit item of personal property included in the *en masse* assessment or the disallowance of any exemption in respect to any separate unit item of personal property included in the *en masse* assessment but on the contrary such appeal is confined solely to the consideration of overvaluation or the disallowance of an exemp-

548

tion in respect to the property subject to the *en masse* assessment as a whole.

Hence it is that where, as here, the statute levying an *ad valorem* tax upon personal property expressly requires that all personal property be assessed separately for each item thereof and for whatever cause the assessing officer fails to comply with the statutory requirement and contrary thereto makes *en masse* assessments thereof, upon an appeal from an *en masse* assessment by the taxpayer, the statutory appellate tribunals are without jurisdiction or power to consider the overvaluation of or the disallowance of an exemption in respect to any unit item of personal property included in the *en masse* assessment appealed from but are confined to the consideration only of grounds of reduction in valuation or grounds for the allowance of exemptions that have been presented or preserved before the assessing officer upon assessment and which affect the *en masse* assessment as a whole.

The assessor raised the objection that only from separate assessments, as contradistinguished from *en masse* assessments or *en gross* assessments, may appeals be prosecuted. This is partially true but not entirely so. The powers and duties of the statutory appellate bodies provided by the tax law must be observed and exercised consistently with the primary duty of assessing officers to assess personal property separately as to each item thereof. Upon an appeal from an *en masse* assessment the valuation of any item of personal property included in the mass assessment of which no separate assessment was made is not subject to review. Otherwise the requirement of section 3 of the Personal Property Tax Act would be rendered nugatory. Assessments in the first instance would be made by the statutory appellate bodies instead of by assessors. It is upon the latter, and not the former, that the power to assess is expressly conferred. It is conceivable however that an *en*

*masse* assessment might be subject to objections that were confined to and involve solely the assessment as a whole and would not involve or require the review of the value at the taxation period of, or any exemption in respect to any separate item of, personal property considered as a unit included in the *en masse* assessment. In such event the assessment as a whole and not any of the separate items of personal property of which it was composed would be in issue. It was to meet this situation, we think, that the legislature accorded to aggrieved taxpayers the right to appeal from any assessment. The language of the statute is sufficiently broad to admit of an appeal from an *en masse* assessment, however irregular, provided that the objections thereto have been properly presented and preserved before the assessing officer upon the assessment and are within the jurisdiction or power of the appellate body to review. This conclusion is not inconsistent with the language of section 3 of the Personal Property Tax Act nor with section 40 of the Real Property Tax Act. On the contrary, it is in harmony therewith. Both provisions are consistent and, provided that the statutory requirement as to the manner of making assessment is observed, both provisions may coexist. Nor does this mean that where upon an appeal from an *en masse* assessment an objection thereto results successfully, the valuation of or the disallowance or exemption in respect to every separate item of personal property included in the mass assessment is open to review. In such event it is only the items included in the *en masse* assessment of which the assessor has made assessments pursuant to law that are subjects of review. So long as the appellate tribunal having jurisdiction of the appeal confines itself to the exercise of its appellate powers and refrains from arrogating unto itself the powers conferred upon the assessing authorities the integrity of the provision of section 3 of the Personal Property Tax Act is preserved.

It is only when the effect of sustaining a general objection to an *en masse* assessment is to entitle the appellant to the reassessment of the personal property included in the *en masse* assessment that the reviewing body may consider the overvaluation of or the disallowance of an exemption in respect to a unit item of personal property included in the *en masse* assessment appealed from, and then only to the extent that such items have been separately assessed in accordance with law. This exception to the general rule is involved in those instances where the assessor, upon the assumption that the taxpayer had used the valuation of certain personal property returned by it in the determination of its tax liability under the Federal or territorial income tax laws, used such valuations as the "fair and reasonable value" of the property to which it referred. Upon the appeal of the taxpayer, should it appear that the assumption of the assessor in that regard was incorrect, the assessment to which the objection was taken would necessarily fall. But it would not follow that all the personal property included in the *en masse* assessment thus affected might be reassessed as to its fair and reasonable value. Unless there is included in the *en masse* assessment assessments made pursuant to law there is nothing for the appellate body to review. On the other hand, if assessments made pursuant to law are included in the *en masse* assessment, such assessments are subject to review and it is within the jurisdiction of the appellate body before which the appeal is pending to reassess the property subject thereto according to its fair and reasonable value.

Nor may the validity of an assessment be called into question upon a statutory appeal. The right to appeal from an assessment presupposes the existence of a valid assessment; an invalid assessment is no assessment. Neither the disallowance of the statutory exemption nor overvaluation involves validity of an assessment. The appellate jurisdic-

tion expressly granted the intermediate bodies upon an appeal from an assessment is inconsistent with an implied power to determine the validity of an assessment. The administrative machinery provided repels such implication. The board of review and the tax appeal court, with the exception of the chairman of the latter, are composed of lay members. And, had the legislature intended the power for which the taxpayer contends, it would not have impliedly limited the powers of the chairman of the tax appeal court, the only member who, under the statute must be learned in the law, by expressly providing that he have power to "determine the admissibility of evidence and decide questions of law." Power to subpoena witnesses, administer oaths, examine books and records, hear and take evidence and the like does not confer jurisdiction. Such powers are but mere incidents of the exercise of jurisdiction. Where, as here, the power vested in statutory administrative bodies to which appeals from *ad valorem* assessments of personal property may be prosecuted is limited to the allowance or disallowance of exemptions pursuant to law, whether or not previously allowed or disallowed by the assessor and to increase or lower assessment, such statutory administrative board is without jurisdiction to determine the validity of an assessment.

Under former tax statutes considerably broader in their scope than the statute under consideration this court has repeatedly observed the necessity of resort to the courts where the validity of *ad valorem* property tax assessment was involved. (See *McBryde* v. *Kala*, 6 Haw. 529 ; *Knudsen* v. *Stolz*, 8 Haw. 81; *Hilo Sugar Co.* v. *Tucker*, 8 Haw. 148; *Mika* v. *Knudsen*, 8 Haw. 196; *Parker* v. *Shaw*, 9 Haw. 407; *Shaw* v. *Booth*, 14 Haw. 117.) For juridical construction of statutes granting similar appeals see *Board of Com'rs* v. *Denver Union Water Co.*, *supra; Consumers' Ice Co.* v. *State*, 82 Md. 132, 33 Atl. 427, 428. In many jurisdictions

the power to allow or disallow exemptions is not granted to administrative boards similar to our divisional boards and our tax appeal court. Here, however, that power is expressly granted. The correction of error affecting the amount of an assessment includes not only valuation but also the allowance or disallowance of exemptions whether or not previously allowed or disallowed by the assessor. The granting of the powers enumerated in the statute necessarily excludes the existence of all other powers. As a result, neither upon an appeal from an assessment nor upon successive appeals permitted by the statutes, may the invalidity of an assessment be called into question.

From what has been said it necessarily follows that upon a statutory appeal objections to an assessment upon grounds affecting its validity, such as the unconstitutionality of the statute under and in pursuance of which the assessment was made, or immunity from assessment upon the ground that the subject of assessment was not within the taxing jurisdiction but on the contrary was in the course of interstate commerce, or that the property assessed was real property and not personal property within the meaning of that term as employed in the Personal Property Tax Act, are not within the jurisdiction of the statutory appellate bodies to review.

But whatever the scope of review an appeal does not lie from an assessment to which no objection has been made. The statutory appeals provided do not contemplate the reassessment of the taxpayer's personal property in the appellate tribunal. It is only where disputes have existed between the taxpayer and the assessor within the power of the appellate bodies to consider and then only to the extent of the questions raised by such disputes that the assessments involved may be reviewed.

This court has held upon two former occasions that the return and assessments constitute the pleadings upon an

appeal from an assessment. (*Re Taxes Waialua Agr. Co.,* 30 Haw. 755, 774; *Re Taxes Ewa Plant. Co.,* 30 Haw. 775, 776.) Resort may also be had to the record of the proceedings had before the assessing officer upon assessment to determine what issues were raised by the taxpayer in respect to the assessments from which an appeal is pending. But unless by the return, assessment or proceedings had before the assessing officer upon assessment it appears that the objections raised before the appellate tribunal were raised before the assessing officer upon assessment, the objections cannot be considered.

The jurisdiction of divisional boards of review is limited to "disputes" between the assessor and the taxpayer; obviously to disputes between the assessor and the taxpayer upon the assessment of the personal property of the latter. Unless a dispute exists between the assessor and the taxpayer the divisional board is without jurisdiction. Similarly the tax appeal court upon an appeal from a decision of the divisional board. Nor does the failure of the assessor to object to the presentation by the taxpayer of objections to an assessment for the first time in the appellate tribunal constitute a waiver. The assessor cannot, by his failure to object, confer upon a board of review jurisdiction to hear disputes that did not theretofore exist between him and the taxpayer. The existence of a dispute being jurisdictional the assessor is powerless to waive the jurisdictional prerequisite. From the limitations thus imposed upon the jurisdiction of the statutory appellate bodies it follows that it is incumbent upon a taxpayer to present and preserve before the assessing officer upon the assessment of his personal property all objections he may have to valuations or to disallowance of exemptions. One of the means afforded taxpayers for the presentation and preservation of such objections as they may have to the valuation of their personal property or the disallowance of exemptions is to file,

554

when requested so to do upon the order of the tax commissioner, a return. Whether at the time involved it was incumbent upon taxpayers to prepare returns in the manner required in the forms prescribed by the tax commissioner in 1934 we deem unnecessary to decide. The statute (§ 28) required that returns contain a "description" of the taxpayer's personal property. Considering the purpose of the return, any method of description employed should at least be sufficient to reasonably admit of the identification by the assessing officer of the property to which the return refers and its assessment according to law. The extent to which personal property should be described in a taxpayer's return under section 28 we do not attempt to say. It is immaterial to the present issues. The statute has been amended in respect to returns of personal property and our gratuitous consideration of the question could not possibly serve any useful purpose.

Another means afforded taxpayers to present and preserve before the assessing officer such objections as they may have to the valuation of their personal property or the disallowance of exemptions is to make the same known to the assessing officer upon notice of assessment and before the assessment lists close. The provisions of law requiring notice of assessments are intended for that purpose.

If, by reason of the deficiencies of his return or the failure on his part to otherwise make known to the assessing authorities upon the assessment of his personal property all objections he may have to the valuation placed thereon or to the disallowance of exemptions, a taxpayer is limited upon appeal to the review only of those objections which the return, assessment and the proceedings had upon assessment disclose to have been made by him, he has no one to blame but himself.

If, as appears from the record, the general and specific objections enumerated were the only objections urged by

the taxpayer upon the assessment of its personal property and if upon appeal the appellant may seek only review of those valuations of its personal property which were involved in the objections urged, then neither the tax appeal court nor this court may review any assessment not involved in dispute, irrespective of the apparent general and comprehensive form of the appellant's original notice of appeal to the divisional board. We do not deem it within the issues to determine the validity of the *en masse* assessments made by the assessor of the taxpayer's property. Its appeal from the assessments forecloses consideration of the question in this proceeding.

But not alone are the subjects of review confined to the objections raised by the taxpayer before the assessing officer upon the assessment of his personal property, but in order to transfer an assessment against which an objection has been made to the appropriate appellate body for review, the statutory requisites for the transfer of an assessment for review must be strictly complied with.

In the instant case the taxpayer, instead of appealing from the assessments, objections against which had been made by it before the assessing officer upon the assessment of its personal property, appealed from the assessments of its property made by the assessor by class or type of personal property. Only one of the items in its notice of appeal, i.e., "growing crops," is coincident with any assessment made. Moreover, in every instance but that of "goods, wares, merchandise" the respective amounts involved included undisputed items. Hence it is that the only assessments subject to review were the assessments made by class or type of personal property.

Several of the deductions claimed by the taxpayer and disallowed by the assessor upon the assessment of its personal property were later conceded by the assessor before the tax appeal court.

Obviously concessions by the assessor could not, under the provisions of section 33 of the Real Property Tax Act, incorporated by reference into the Personal Property Tax Act, legally affect the assessment lists in so far as they included the assessment of the personal property of the taxpayer. After April 30 the assessment lists may not, pending appeal, be changed by anyone except a court or other tribunal having jurisdiction and then only upon the final determination of the appeal. After the assessment lists are closed, it is for the courts or other tribunals having jurisdiction to finally determine and not for the assessor to say *in limine* to what extent the assessment lists so far as they affect the taxpayer may be changed. We shall assume for the purposes hereof that the assessments affected by the concessions of the assessor are in the same category as all other assessments to which objections were made.

At the hearing in this court upon the jurisdictional questions involved one of the attorneys for the taxpayer conceded, as we understand his admissions, that costs of "growing crops" were used by the taxpayer in determining income tax liability under the territorial Income Tax Law.

Holding as we do that upon a statutory appeal from a personal property tax assessment the validity of the assessment may not be called in question, we shall assume for the purposes of this case that the second sentence of section 9 of the Personal Property Tax Act is not unconstitutional upon any of the grounds urged by the taxpayer.

Concrete application of the principles herein announced results in the following conclusions:

1. The only assessments of the personal property of the taxpayer as of January 1, 1934, transferred for review by its notice of appeal to the board of review of the second taxation division were the respective assessments by class or type of personal property enumerated in said notice of appeal.

2. The following assessments included in said notice of appeal, viz: "agricultural products—sugar & molasses $20,554.60"; "live stock incl. harness & saddles $58,278.00," were not in dispute upon the hearing before the tax appeal court and any objections that the taxpayer may have had thereto may be considered as abandoned.

3. The assessment of "business furniture and fixtures" referred to in the taxpayer's notice of appeal includes assessments of undisputed items. The deduction claimed for the installation of a refrigerator plant upon the ground that the refrigerator plant was realty would not affect the assessment as a whole. Nor was the objection that "electric stoves" were realty subject to review. The appeal from this assessment should not have been considered by the tax appeal court.

4. Neither the constitutionality of the second sentence of section 9 of Act 9 of the Special Session Laws of 1933 nor the validity of the respective assessments of "Calcutta bags" or "camp lighting" upon the grounds urged by the taxpayer were respectively subject matters of review upon a statutory appeal from a personal property assessment. These matters should not therefore have been considered by the tax appeal court.

5. The general objections of the taxpayer that, with the exception of annually inventoried merchandise and supplies, no valuation of personal property was made by it to determine income tax liability and that the provisions of the second sentence of section 9 of the Personal Property Tax Act did not apply, will be considered; but they will be confined in their application to the assessment of "machinery and equipment" as a whole. In the event that neither of such objections is found to be well-taken, the deduction claimed against the book value of "mill improvements" for "accrued obsolescence & depreciation not recorded in books" if deductible will be considered, but only to the

extent that the deduction claimed affects the assessment of "machinery and equipment" as a whole. In the event that either of the general objections referred to is found to be well-taken, overvaluation of "machinery and equipment" as a whole will not be considered other than the fair and reasonable value of "1 — 12x14 Centrif. Pump" described as being in "Pump Station No. 3," none of the other personal property of the taxpayer included in the assessment of "machinery and equipment" having been assessed by the assessing officer separately for each item thereof.

6. The only specific objections to assessments that were presented and preserved by the taxpayer before the assessing officer upon the assessment of its personal property as of January 1, 1934, and by its notice of appeal to the board of review of the second taxation division transferred for review and which may be considered by this court are: (a) the two deductions respectively claimed against "meat market inventory" and "inventory of merchandise on hand" and then if deductible respectively only to the extent that both these deductions affect the assessment of "goods, wares, merchandise" as a whole; (b) the two deductions respectively claimed against the inventory values of supplies in "plantation warehouse" and in "lime kiln" and then if deductible respectively only to the extent that both these deductions affect the assessment of "raw materials and supplies" as a whole and to the extent that the deduction claimed against the inventory value of supplies in the "lime kiln" if deductible affects the separate assessments of quick lime and hydrated lime; (c) the four deductions claimed against the costs of "growing crops" numbered 1, 3, 6 and 7 respectively and then if deductible only to the extent that said objections or any of them affect the assessment of "growing crops" as a whole.

7. Otherwise the objections urged by the taxpayer to the assessment of its personal property as of January 1,

1934, should not have been and will not be considered. Consideration of the taxpayer's objections to the assessment made of its personal property will be limited accordingly upon the merits.

*J. V. Hodgson*, Assistant Attorney General (W. B. Pittman, Attorney General, and S. B. Kemp, Attorney General, with him on the briefs), for the tax assessor.

*R. A. Vitousek, A. G. Smith* and *M. Cades* (W. L. Stanley, R. A. Vitousek, C. D. Pratt and Smith, Wild, Beebe & Cades on the briefs) for the taxpayer.