**\*\* FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER  \*\***

**Electronically Filed
Supreme Court
SCAP-18-0000578
19-JUN-2020
02:42 PM**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

_____

OCEAN RESORT VILLAS VACATION OWNERS ASSOCIATION,
a domestic nonprofit corporation; OCEAN RESORT VILLAS NORTH
VACATION OWNERS ASSOCIATION, a domestic nonprofit corporation;
VIC H. HENRY; and PETER A. BAGATELOS, Plaintiffs-Appellees,

vs.

COUNTY OF MAUI and MAUI COUNTY COUNCIL,
Defendants-Appellants.

_____

SCAP-18-0000578

APPEAL FROM THE CIRCUIT COURT OF THE SECOND CIRCUIT
(CAAP-18-0000578; 2CC181000848)

JUNE 19, 2020

McKENNA, POLLACK, AND WILSON, JJ.,
WITH RECKTENWALD, C.J., CONCURRING AND DISSENTING,
WITH WHOM NAKAYAMA, J., JOINS

OPINION OF THE COURT BY McKENNA, J.

## I.  Introduction

This interlocutory appeal from the Circuit Court of the

Second Circuit ("circuit court")[1] involves a taxpayer challenge

_____

[1]    The Honorable Peter T. Cahill presided.

to the timeshare real property tax classification created by the County of Maui and Maui County Council (collectively, the "County") in 2004.  Plaintiffs-Appellees are timeshare owners of Westin Ka'anapali Ocean Resort Villas ("ORV") and Ocean Resort Villas North ("ORVN") (collectively, "Taxpayers").  Taxpayers initially filed a Complaint in 2013 and First Amended Complaint ("FAC") in 2014 seeking declaratory relief pursuant to Hawai'i Revised Statutes ("HRS") § 632-1 regarding the legality and constitutionality of the County's timeshare real property tax classification and whether its method of promulgation violated the Hawai'i Sunshine Law (Counts I through IV).

In preparing its defense to the initial Complaint, the County discovered it had not assessed Taxpayers over $10 million in timeshare real property taxes before 2009.  The County then issued "amended assessments" to the Taxpayers for tax years 2006, 2007, and 2008 for ORV, and 2008 for ORVN, who paid the taxes under protest and appealed to the Maui County Board of Review ("BOR"), then on to the Tax Appeal Court ("TAC").  The Taxpayers then also filed a Second Amended Complaint ("SAC") alleging the County issued the "amended assessments" in retaliation for the Taxpayers' lawsuit.  The SAC added Counts V through VII again seeking declaratory relief pursuant to HRS § 632-1 alleging illegality and unconstitutionality as well as seeking damages and attorneys' fees pursuant to 42 U.S.C.

§§ 1983 and 1988 in Count VIII for the alleged constitutional violations.

On cross-motions for partial summary judgment, the circuit court voided the timeshare real property tax classification as illegal, and it ordered the County to refund the Taxpayers the $10 million+ in "amended assessments" plus general excise tax and interest, as well as approximately $83,000 in fees paid to the County BOR, and $111,000 in appeal fees paid to the TAC. The circuit court also awarded the Taxpayers over $455,000 in attorneys' fees and over $18,000 in costs in Count VIII. The County timely appealed, and this court accepted transfer of the appeal from the Intermediate Court of Appeals ("ICA").

The County raises seven points of error:  (1) the circuit court improperly exercised subject matter jurisdiction over the case, as exclusive subject matter jurisdiction lay with the TAC; (2) the voiding of the timeshare real property tax classification violated the separation of powers doctrine; (3) the circuit court's ruling that the timeshare real property tax classification may only be established through "actual use" of the property was contrary to the Maui County real property tax code; (4) the circuit court's ruling that the Taxpayers are entitled to tax refunds threatens the County's fiscal health; (5) the circuit court was incorrect in ruling that the "amended assessments" were illegal and retaliatory; (6) the circuit

court's order for a refund of the "amended assessments" and related tax appeal fees was an abuse of discretion; and (7) the circuit court's award of attorney's fees and costs was an abuse of discretion. According to the parties, points of error 1 through 4 relate to the initial constitutional challenge to the timeshare real property tax classification, and points of error 5 through 7 relate to the SAC's additional challenges to the "amended assessments."

During the course of briefing before this court, the parties participated in voluntary mediation and entered into a partial settlement with respect to the "amended assessment" points of error (i.e., Points of Error 5, 6, and 7). They then stipulated to partially dismiss this appeal and remand the case to the circuit court for vacatur of the final judgment and various orders on the "amended assessment" Counts (Counts V, VI, VII, and VIII of the SAC). The County also contemporaneously filed a motion for partial dismissal of the appeal, again based on the parties' partial settlement, and asked this court to directly order vacatur of the circuit court's final judgment and orders on the "amended assessments" counts. The Taxpayers filed a notice of no opposition.

A majority of this court disapproved of the stipulation and denied the motion to dismiss. As further explained below, we noted, "This court has adopted the United States Supreme

Court's holding in U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship, 531 U.S. 18, 29 (1994), that, in general, 'mootness by reason of settlement does not justify vacatur of a judgment under review.' See Goo v. Arakawa, 132 Hawaiʻi 302, 314, 321 P.3d 655, 665 (2014)." We further observed that, as a practical matter, the parties had stipulated to vacate one of the circuit court's orders that contained an issue still under review in the present appeal.

In examining this appeal, we now note that the first point of error, challenging the circuit court's subject matter jurisdiction, is dispositive in our review of the circuit court decisions certified for interlocutory appeal, which involved Counts I and V through VIII of the SAC. We hold that the circuit court was without subject matter jurisdiction over Counts I and V through VII of the Taxpayers' SAC. Although there is a right to jury trial for declaratory judgment actions under HRS § 632-1, In re Marn Family Litig., 141 Hawaiʻi 1, 8, 403 P.3d 621, 628 (2016), Taxpayers sought declaratory relief in those counts pursuant to HRS § 632-1, which explicitly provides that "declaratory relief may not be obtained . . . in any controversy with respect to taxes[.]" The partial ruling as to Count I and the final judgment as to Counts V through VII certified for interlocutory appeal were based on declaratory rulings regarding such "controvers[ies] with respect to taxes."

5

With respect to those counts, the Taxpayers were instead required to challenge the legality and constitutionality of Maui County's real property timeshare classification and rates through the procedures set forth in HRS chapter 232 and Maui County Code ("MCC") chapter 3.48, which require an appeal to the county BOR, then to the TAC.

In addition, with respect to the final judgment for Count VIII (the 42 U.S.C § 1983 count requesting a jury trial and damages due to alleged federal constitutional violations, for which attorneys' fees and costs were awarded by the circuit court pursuant to 42 U.S.C § 1988), the circuit court's judgment was dependent on the federal constitutional violations declared by the circuit court to have existed in counts over which it lacked subject matter jurisdiction.[2]  Therefore, the final judgment on Count VIII must also be set aside.

We therefore vacate the circuit court's orders and judgment giving rise to this interlocutory appeal and remand this case to the circuit court for further proceedings consistent with this opinion.

---

[2]     See also infra note 19.

## II.  Procedural history

### A.  Complaint, FAC, and SAC

On August 19, 2013, the Taxpayers filed a Complaint challenging the constitutionality of Maui County Ordinance No. 3227, which created the County's timeshare real property tax classification in 2004, and demanded a jury trial.  With respect to "jurisdiction," Taxpayers specially alleged that "[j]urisdiction in this Court is proper pursuant to [HRS §] 632-1."

According to the Taxpayers, immediately prior to the establishment of a separate real property tax classification for timeshares, timeshares had been included in the "hotel and resort" real property tax classification and therefore taxed at the hotel and resort rate.  The Taxpayers alleged that the County's creation of a separate real property timeshare tax classification, and its accompanying higher rate, was intended to make up for losses in revenue from the transient accommodations tax ("TAT"), which is a state tax shared with the counties.  They also alleged that Maui County Resolution No. 13-60, which established the 2014 timeshare real property tax rate, was adopted in violation of Hawai'i's Sunshine Law.  The Taxpayers represented that they paid their real property taxes for the 2014 fiscal year under protest.

Count I of the Complaint alleged an equal protection violation under the United States Constitution and the Hawai'i State Constitution. The Taxpayers alleged that the timeshare real property tax rate was the highest real property tax rate in the county, although timeshare use does not differ from hotel and resort use. They also alleged that the tax disproportionately impacted nonresidents, who are the overwhelming majority of timeshare owners in the county of Maui. Count II alleged a Sunshine Law violation. The Taxpayers alleged that some Maui County Councilmembers "sought to secure other Councilmembers' commitment to vote on the timeshare tax rate" through communications that violated the Sunshine Law. Thus, the Taxpayers requested relief in the form of a declaration that (1) the timeshare classification and tax rate violated the equal protection clauses of the United States Constitution and Hawai'i State Constitution, and (2) Maui County Resolution No. 13-60, establishing the fiscal year 2014 real property timeshare tax rate, was void as violative of the Sunshine Law.

On August 28, 2014, the Taxpayers filed their FAC. Taxpayers again asserted jurisdiction pursuant to HRS § 632-1. The FAC added another Sunshine Law violation count, alleging that some Maui County Councilmembers communicated improperly with other Councilmembers to secure their votes for Maui County

Resolution No. 14-54, which established the fiscal year 2015 timeshare real property tax rate. The FAC also alleged that the fiscal year 2014 and 2015 Sunshine Law violations deprived the Taxpayers of due process under the United States Constitution and Hawai'i State Constitution. As a result of the addition of these two new counts, the four total counts were renumbered as follows: Count I (equal protection), Count II (due process), Count III (Sunshine Law violation for fiscal year 2014), and Count IV (Sunshine Law violation for fiscal year 2015). The Taxpayers again requested relief in the form of a declaration that (1) the timeshare classification and tax rates violated the equal protection clauses of the United States and Hawai'i Constitutions, and that (2) Maui County Resolution Nos. 13-60 and 14-54, establishing the fiscal year 2014 and 2015 real property timeshare tax rates, respectively, were void as violative of the Sunshine Law, and, therefore, also violated the Taxpayers' procedural due process rights under the United States Constitution and Hawai'i State Constitution.

Taxpayers were later granted leave to file the SAC.[3] Once again, Taxpayers alleged jurisdiction pursuant to HRS § 632-1. In the SAC, filed August 12, 2016, they alleged that the County

---

[3] The County unsuccessfully opposed the Taxpayers' motion for leave to file the SAC. The County argued that the circuit court lacked subject matter jurisdiction over the tax disputes involving the "amended assessments," as exclusive subject matter jurisdiction lay with the TAC.

9

had issued to them "amended assessments" in 2016 for tax years 2006, 2007, and 2008 for ORV, and for 2008 for ORVN, in retaliation for the Taxpayers' lawsuit.  For those years, the County had taxed the land and buildings in ORV and ORVN but had not assessed the timeshare real property tax.  The County's "amended assessments" totaled over $10 million and were due in 30 days.  The Taxpayers stated they paid the taxes under protest and appealed the "amended assessments" to the County BOR, paying a $75 filing fee for each of the 1,115 appeals brought by timeshare owners.  In response to these "amended assessments," the Taxpayers added four more counts to their Complaint:  Count V (declaratory judgment as to the illegality of the "amended assessments"), Count VI (violations of the right to free speech and the right to petition the government for redress under the United States Constitution and Hawai'i State Constitution), Count VII (violation of procedural due process under the United States Constitution and the Hawai'i State Constitution), and Count VIII (42 U.S.C. § 1983 claim for damages based on the constitutional violations).

The Taxpayers again requested a declaration that (1) the real property timeshare classification and fiscal year 2014 and 2015 rates were unconstitutional, (2) the Maui County resolutions establishing the fiscal year 2014 and 2015 real property timeshare tax rates were void as violative of the

Sunshine Law and, therefore, violated Taxpayer's procedural due process rights, and that (3) the "amended assessments" were invalid and unenforceable because they violated the Maui County Code; the rights to free speech, to petition the government for redress, and to procedural and substantive due process under the United States Constitution and the Hawai'i State Constitution; therefore, the Taxpayers were entitled to refunds of real property taxes and appeal fees paid.[4]

## B.    The County's motion for summary judgment as to Counts I and II of the FAC

On July 1, 2016, the County moved for summary judgment on Counts I and II of the FAC, arguing that the circuit court lacked subject matter jurisdiction over the case, as the TAC had exclusive jurisdiction over tax disputes.  They quoted HRS

---

[4]    On August 12, 2015, the Taxpayers' filed a complaint against the County in Civ. No. 15-1-0435 before Second Circuit Court Judge Rhonda I. L. Loo.  In it, they alleged that the County set the fiscal year 2016 timeshare real property tax rate in County Resolution No. 15-52 in violation of the Sunshine Law (Count I), which violated their due process rights under the United States Constitution and the Hawai'i State Constitution (Count II).  The Taxpayers again sought a declaration to that effect from the circuit court.

A month later, the County filed its answer and a counterclaim for set-off and/or damages against the Taxpayers.  The County counterclaimed for set-off, against any damages claimed by the Taxpayers, the amount of real property timeshare taxes owed by the Taxpayers due to the County's erroneous underassessment of real property taxes before 2009.

In November 2015, the Taxpayers moved to dismiss the counterclaim. They argued that the circuit court lacked subject matter jurisdiction because the MCC "vests the [BOR] and [TAC] with exclusive jurisdiction over appeals of contested tax liability. . . ."  The Taxpayers then moved to consolidate the matter before Judge Loo with the instant proceeding before Judge Cahill. Judge Cahill denied the motion to consolidate.  Judge Loo then agreed with the Taxpayers, and granted their motion to dismiss the County's counterclaim. According to the County, the Taxpayers ultimately dismissed, with prejudice, the lawsuit before Judge Loo.

§ 232-12, which states that the TAC "shall determine all questions of fact and all questions of law, including constitutional questions. . . ." The circuit court denied the motion.

## C. Disposition of Counts V, VI, VII, and VIII of the SAC

On December 1, 2016, the Taxpayers filed four separate motions for partial summary judgment as to Counts V, VI, VII, and VIII of the SAC. On December 12, 2017, the County filed its own motion for partial summary judgment as to Count V of the SAC. The County also filed an opposition to the Taxpayers' motion for partial summary judgment as to Count V, arguing that the circuit court lacked subject matter jurisdiction over Count V, as exclusive subject matter jurisdiction lay with the TAC over this tax dispute.

On January 26, 2017, the circuit court filed the "Court's Sua Sponte Order." In it, the circuit court stated as follows with respect to subject matter jurisdiction:

> On the issue of the Court's jurisdiction to hear the issues related to real property taxes, it is noted that the Constitution of the State of Hawai'i preserves any party's right to a trial by jury. One or more party in this case has requested jury trial. Once it has been demanded, the jury demand applies to all unless a mutual waiver has been agreed upon.
> The statute creating a "TAX COURT" states that the Tax Court shall decide all issues of fact and law. HRS § 232-13. The statute does not authorize the Tax Court to empanel a jury for any purpose or to decide those issues that a party would otherwise have a right to be determined by a jury. Although the statutes creating the Tax Court discuss a party's ability to raise "constitutional issues," the statute appears to be devoid of a mechanism whereby a

> person's right to trial by jury on those issues is preserved.  HRS § 232-15.  In addition, the precise question that the Tax Court has jurisdiction to decide is set forth in HRS § 232-13.

The question of the circuit court's subject matter jurisdiction had come up because the Taxpayers had challenged the "amended assessments" both in circuit court and by bringing appeals before the County BOR and TAC.  The circuit court therefore invited the parties to submit further briefing addressing "(1) whether the Court's view of the statutes and law is accurate; (2) if accurate discuss how does such a view comports [sic] with each party's rights; and (3) assuming this court exercises jurisdictions [sic] what if any impact does that have on the current status of any pending tax appeal, and how should this Court handle those issues."

The principal argument in the Taxpayers' further briefing was that the circuit court had jurisdiction over the case because they challenged the legality of the "amended assessments," not just their amount.  For this proposition, Taxpayers cited Kingdom and Territory of Hawai'i cases, most of which predated the tax appeal provisions in HRS chapter 232 and MCC chapter 3.48.  See infra note 13.

The County argued that the Taxpayers' challenge to the legality of the "amended assessments" was a challenge to the "change in valuation of the same property," or the amount of the assessments.  It contended that exclusive subject matter

jurisdiction over the contested amount of taxes lay with the TAC.

On August 9, 2017, the circuit court ruled in the Taxpayers' favor on the "amended assessment" counts in the SAC (Counts V, VI, VII, and VIII).[5]  It ordered the County to refund the Taxpayers the over $10 million in "amended assessments," as well as $83,325.00 in appeal fees to the BOR they had paid.  By further order, the circuit court directed the County to pay $540,545.94 (representing $111,400.00 in appeal fees the Taxpayers paid to the TAC, and $429,145.94 in general excise taxes the Taxpayers paid to the State).  The circuit court later granted the Taxpayers' request for $455,749.56 in attorneys' fees and $18,177.43 in costs in Count VIII.

The circuit court concluded it could assert subject matter jurisdiction over the "amended assessment" counts, Counts V through VIII of the SAC, because HRS § 232-13 does not empower the TAC to empanel a jury.  It went on to conclude that "circuit courts are courts of general jurisdiction, and their subject matter jurisdiction extends to all matters properly brought before them, unless precluded by constitution or statute."  The

---

[5]     The circuit court's August 9, 2017 order is titled "Court's Findings of Fact, Conclusions of Law; Order Granting Plaintiffs' Motions for Partial Summary Judgment on Counts V, VI, VII and VIII of the Second Amended Complaint Filed August 12, 2016, filed on December 1, 2016; and Denying Defendants County of Maui and the Maui County Council's Motion for Partial Summary Judgment as to Count V of the Plaintiffs' Second Amended Complaint Filed 2016-08-12, Filed on December 12, 2016."

14

circuit court further stated that the "TAC does not have exclusive jurisdiction over [the Taxpayers' claims] in this case, which specifically challenge the legality of the Amended Assessments, not their amount."  The circuit court stated that the TAC had no power to grant the Taxpayers' requested relief, which was a declaration that the taxes were unconstitutional.  Lastly, the circuit court concluded that it had asserted jurisdiction over the "amended assessment" claims first; therefore, it would retain jurisdiction through the conclusion of the case.

**D.  Disposition of Count I of the SAC**

The Taxpayers then turned to Count I of the SAC, which alleged an equal protection violation under the United States Constitution and the Hawaiʻi State Constitution.  On September 29, 2017, the Taxpayers filed a "Motion for Partial Summary Judgment, Based on Use, as to Count 1 (Equal Protection) of the Second Amended Complaint Filed August 12, 2016."  They argued there was no rational basis supporting different real property taxation rates for timeshares versus hotels, where there was no difference in actual use of the two types of properties.

On December 19, 2017, the Taxpayers filed a "Motion for Partial Summary Judgment Re: Illegality of the Timeshare Real Property Tax Classification," also as to Count I.  They argued that the County had no authority to create a tax on timeshares

to remedy disparities in state TAT revenues. They elaborated that the MCC authorizes real property tax classifications based on distinctions in use only. Further, they contended that the Hawai'i State Constitution gives the state, not counties, power over remedying any disparities in assessing or distributing the TAT.

In its memorandum in opposition, the County countered that the Taxpayers' arguments that timeshare and hotel use are identical, and that the timeshare real property tax is a de facto TAT, are factually erroneous. The County asserted that the rational bases behind the timeshare real property tax classification included collecting a more equitable share of taxes for County services used by timeshare owners, eliminating the tax disparity between hotels and timeshares, and disincentivizing hotel conversion to timeshares.

On March 23, 2018, the circuit court ruled in the Taxpayers' favor.[6] The circuit court found that the County's purpose in establishing the timeshare real property tax classification was to remedy a perceived disparity in TAT assessments. The circuit court concluded that such purpose

---

[6] The circuit court's ruling was titled "Findings of Fact, Conclusions of Law; Order Granting Plaintiffs' Motion for Partial Summary Judgment Re: Illegality of the Timeshare Real Property Tax Classification, Filed December 19, 2017, and Denying as Moot Plaintiffs' Motion for Partial Summary Judgment, Based on Use, as to Count I (Equal Protection) of the Second Amended Complaint Filed August 12, 2016, Filed September 29, 2017."

violated the MCC, which requires that tax classifications of real property be based on actual use. The circuit court concluded that the timeshare real property tax classification was "illegal and void."

**E.  Appeal**

On June 25, 2018, the circuit court entered orders allowing interlocutory appeals of its rulings in Counts I and V through VIII of the SAC.[7]

The County then timely filed its Notice of Appeal from the June 25, 2018 orders certifying the interlocutory appeals. This case was subsequently transferred from the ICA to this court. The County raises the following points of error, the first of which is dispositive of this appeal:

> (1) The circuit court's assertion of subject matter jurisdiction over this case was wrong because special and exclusive subject matter jurisdiction lay with the [TAC];
>
> (2) the circuit court's ruling voiding the Timeshare real property taxation classification was contrary to the constitutional doctrine of separation of powers;
>
> (3) the circuit court's ruling that the Timeshare real property taxation classification may only be established upon consideration of the "actual use" of property was

---

[7]     The circuit court's orders are entitled (1) "Order Certifying for Interlocutory Appeal the Findings of Fact, Conclusions of Law; (Illegality) Order, Filed March 23, 2018, Pursuant to Hawaii Revised Statutes Section 641-1(b) and Staying Proceedings under Hawaii Rules of Civil Procedure Rule[s] 62(d) and (e)," its partial ruling as to Count I, and (2) "Order Certifying for Interlocutory Appeal Counts V, VI, VII, and VIII of the Second Amended Complaint, Filed August 12, 2016, Pursuant to Hawaii Rules of Civil Procedure Rule 54(b), and Staying Proceedings under Hawaii Rules of Civil Procedure Rule[s] 62(d) and (e)."  On July 2, 2018, the circuit court entered final judgment on Counts V, VI, VII, and VIII of the Second Amended Complaint.

17

wrong and contrary to the Maui County real property tax code;

(4) the circuit court's ruling that the [Taxpayers] are entitled to as much as $34,000,000 in tax refunds was wrong, an abuse of discretion, and threatens the County's bond credit rating and the fiscal security of its residents;

(5) the circuit court's ruling (that the County's decision to assess back taxes upon the Taxpayers for Timeshare real property taxes that were inadvertently not previously taxed, was unconstitutional as "illegal" and "retaliatory") was wrong;

(6) the circuit court's order for a refund for [Taxpayers] of the paid back taxes and appeal fees, pending an Appeal in [the TAC], was an abuse of discretion; and

(7) the circuit court's award of attorneys' fees and costs to [Taxpayers] was an abuse of discretion.

## F. Partial settlement on appeal

The parties then voluntarily submitted their appeal to the Center for Alternative Dispute Resolution's Appellate Mediation Program ("CADR AMP"). Six months later, the CADR AMP filed a report informing the court that "[t]he parties partially settled or narrowed issues, but were unable to resolve the entire appeal" and "case returned to appellate docket)." In a status report, the parties represented that mediation had resolved points of error 5, 6, and 7, and that only the first four points of error remain to be resolved by this court. The parties stated that they entered into a Settlement and Release Agreement in which they agreed to seek vacatur of the circuit court's orders and judgments concerning the "amended assessments."

18

The parties contemporaneously filed a "Stipulation for Partial Dismissal of Appeal with Prejudice and for Remand." The parties stipulated to dismiss with prejudice, pursuant to HRAP Rule 42(b),[8] that part of the appeal involving points of error 5, 6, and 7. To that end, they agreed to seek vacatur of those circuit court orders and judgment giving rise to points of error 5, 6, and 7, including the circuit court's August 9, 2017 order.[9] To the extent that order contained rulings regarding the circuit court's subject matter jurisdiction, however, the parties asked this court not to vacate the order. In other words, on the face of the Stipulation and Order, the parties agree to dismiss an order that they acknowledge may contain an issue still before this court.

The parties further stipulated "that . . . this Court remand the matter in part, only as to the dismissed Points of Error, to the [circuit court] for further action as separately agreed by the parties in their settlement agreement." Under the

_____

[8] HRAP Rule 42(b) is titled "Dismissal in the appellate courts,' and it provides the following:

> If the parties to a docketed appeal or other proceeding sign and file a stipulation for dismissal, specifying the terms as to payment of costs, and pay whatever fees are due, the case shall be dismissed upon approval by the appellate court, but no mandate or other process shall issue without an order of the court. Upon motion and notice, the appellate court may dismiss the appeal upon terms fixed by the appellate court.

[9] See supra note 5.

parties' Settlement and Release Agreement, the "further action" referred to was an agreement to "jointly request that the Hawaiʻi Supreme Court dismiss the Amended Assessment Appeal from SCAP No. 18-0000578 . . . [and] remand this matter in part to the Second Circuit Court, for further action," namely the joint filing of a "Stipulation and Order Partially Lifting Stay" in order to vacate the circuit court's orders and final judgment on the "amended assessment" counts.[10]

A week later, the County filed a "Motion for Partial Dismissal of Appeal with Prejudice and Remand for Vacating of Findings of Fact, Conclusions of Law, Orders and Partial Final Judgment" ("Motion to Dismiss").  Although the Motion to Dismiss and the Stipulation and Order both seek a dismissal of the part of this appeal stemming from the orders and final judgment on the "amended assessment" counts, the Motion to Dismiss went further than the Stipulation and Order and directly asked this court to "direct the circuit court on remand to vacate" the orders and final judgment on the "amended assessment" counts, "if this court deems it appropriate."

---

[10]    Under the Settlement and Release Agreement, the County refunded to the Taxpayers the over $10 million in amended assessments they paid, plus interest, as well as the BOR fees totaling over $83,000.00.  The Taxpayers will keep this refunded amount.  The County will also pay the Taxpayers $585,326.99 (attorneys' fees and costs and TAC appeal fees).  The parties will work out GET taxes owed after the 2020 tax season.

A majority of this court disapproved of the Stipulation and Order and denied the Motion to Dismiss.  The majority noted, "This court has adopted the United States Supreme Court's holding in U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship, 531 U.S. 18, 29 (1994), that 'mootness by reason of settlement does not justify vacatur of a judgment under review.'  See Goo v. Arakawa, 132 Hawai'i 302, 314, 321 P.3d 655, 665 (2014)."  The majority further observed that the parties had stipulated to vacate one of the circuit court's orders that may still be at issue in the present appeal.

### III. Standards of review

#### A.  Jurisdiction

"The existence of jurisdiction is a question of law that we review de novo under the right/wrong standard.  Questions regarding subject matter jurisdiction may be raised at any stage of a cause of action. . . .  A judgment rendered by a circuit court without subject matter jurisdiction is void."  Amantiad v. Odum, 90 Hawai'i 152, 159, 977 P.2d 160, 167 (1999) (citations omitted).

#### B.  Interpretation of statutes and ordinances

Statutory interpretation is a question of law reviewable de novo.  This court's statutory construction is guided by established rules:

First, the fundamental starting point for statutory interpretation is the language of the statute itself.  Second, where the statutory language is plain and unambiguous, our sole

21

> duty is to give effect to its plain and obvious meaning.  Third, implicit in the task of statutory construction is our foremost obligation to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself.  Fourth, when there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists.
>
> When interpreting a municipal ordinance, we apply the same rules of construction that we apply to statutes.

Rees v. Carlisle, 113 Hawai'i 446, 452, 153 P.3d 1131, 1137 (2007) (citations omitted).

## IV.  Discussion

### A.   The circuit court lacked subject matter jurisdiction over the Counts I and V through VIII of the Taxpayers' SAC

#### 1.   The parties' arguments[11]

---

[11]    We note that the Hawai'i Tax Foundation was given leave to file a brief of amicus curiae in this appeal.  The Tax Foundation states it is a "non-partisan, non-political IRC § 501(c)(3) organization whose mission is to educate taxpayers and lawmakers on taxation and public finance."

The Tax Foundation acknowledges that "HRS § 632-1, the declaratory judgment statute on which [the Taxpayers] premised circuit court jurisdiction in their original and first amended complaints, forbids declaratory judgments in tax controversies."  The Tax Foundation goes on, however, to argue that circuit court jurisdiction "is allowed when the lawsuit is not attempting to keep government from assessing and collecting taxes, so there is no bar when the taxes in question have already been paid."  In the Tax Foundation's view, the Taxpayers are not attempting to keep the government from assessing or collecting taxes because they paid their timeshare real property taxes under protest.  The Tax Foundation cites to Grace Bus. Dev. Corp. v. Kamikawa, 92 Hawai'i 608, 613 n.5, 994 P.2d 540, 545 n.5 (2000), for this proposition. This case does not apply to the present appeal, as it held that there was no "actual dispute" before over which the TAC could have had jurisdiction under HRS § 40-35, the "Payment to state under protest" statute, and that a "formal administrative decision, such as a notice of assessment, denial of refund, or an adverse ruling" was required before such a suit could be brought.  92 Hawai'i at 612, 613, 994 P.2d at 544, 545.  Thus, that case is clearly distinguishable, as Taxpayers here are contesting "assessments."

The Tax Foundation also acknowledges that "[s]tatutes and ordinances relating to tax appeals have established specialized procedures for contesting tax assessments and specialized bodies such as the Boards of Review and the Tax Appeal Court," citing HRS chapter 232 and MCC chapter 3.48.  In other words, "tax controversies in court are usually handled by the
(continued. . .)

The County's first point of error is that the circuit court lacked subject matter jurisdiction over this case because special and exclusive subject matter jurisdiction lay with the TAC.  The County supports its position by citing to the tax appeal provisions in HRS chapter 232 and MCC chapter 3.48, as well as Kinkaid v. Bd. of Rev., 106 Hawai'i 318, 104 P.3d 905 (2004).[12]  The County argues that there is no "identifiable constitutional provision, statute, or code provision pursuant to which the [c]ircuit [c]ourt could have asserted general subject matter jurisdiction over an area of law specifically carved out by statute and recognized by this Court as the exclusive jurisdiction of the [TAC]. . . ."  The County therefore asks us to void the circuit court's final judgment; as well as its orders on Counts I, V, VI, VII, and VIII; and to dismiss this

_____

(continued . . .)
[TAC]."  Although the Tax Foundation urges this court to uphold the circuit court's exercise of jurisdiction over this case, due to the five years' worth of work that went into litigating it, ultimately the Tax Foundation expresses doubt that the circuit court could award the Taxpayers damages in the form of tax refunds without "subvert[ing] the prescribed tax appeal processes. . . ."

[12]   The County relies heavily upon Kinkaid for the proposition that special and exclusive subject matter jurisdiction over tax matters lay with the TAC. Kinkaid's holding was not that broad.  In Kinkaid, taxpayers had already appealed their real property assessments to the BOR and brought dueling appeals from the BOR to both the TAC and the circuit court.  Kinkaid, 106 Hawai'i at 320, 104 P.2d at 907.  We held only that the TAC has exclusive jurisdiction over appeals from the BOR, to the exclusion of the circuit court.  Kinkaid, 106 Hawai'i at 324, 104 P.2d at 911.  Thus, Kinkaid does not aid us in addressing the issue in this appeal, which is whether the circuit court had original subject matter jurisdiction to entertain this tax challenge, to the exclusion of the BOR and TAC.

case, without prejudice, for lack of subject matter jurisdiction.

The Taxpayers disagree, asserting that the circuit court had jurisdiction over their case. They contend that their challenge to the County's real property timeshare tax classification was to the constitutionality and legality, and not the amount, of the assessment. Therefore, they argue, they could not have brought their claims to the BOR, which cannot decide questions of constitutionality or illegality. Consequently, they argue, they could not have brought their claims to the TAC, because an appeal to the TAC must come from the BOR. The Taxpayers then assert that circuit courts exercise general jurisdiction, and that their subject matter extends to all matters properly brought before them unless precluded by constitution or statute, citing State v. Kotis, 91 Hawaiʻi 319, 326 n.9, 984 P.2d 78, 85 n.9 (1999). By contrast, they state, the TAC is a court of limited jurisdiction, hearing and deciding, without a jury, direct appeals from tax assessors' assessments or decisions made by a county BOR, citing Lewis v. Kawafuchi, 108 Hawaiʻi 69, 73, 116 P.3d 711, 715 (App. 2005). Lastly, the Taxpayers cite to cases primarily from the Kingdom

and Territory of Hawai'i[13] to support the proposition that there

is a distinction between "challenges to the legality of a tax,

---

[13]    The Taxpayers cite to McBryde v. Kala, 6 Haw. 529 (Haw. King. 1884); Hilo Sugar Co. v. Tucker, 8 Haw. 148 (Haw. King. 1890); Shaw v. Booth, 14 Haw. 117 (Haw. Terr. 1902); Hill v. Yee Chan & Co., 31 Haw. 809 (Haw. Terr. 1931); In re Taxes Maui Agr. Co., 34 Haw. 515 (Haw. Terr. 1938); In re Smart, 54 Haw. 250, 505 P.2d 1179 (1973); and Grace Bus. Dev. Corp. v. Kamikawa, 92 Hawai'i 659, 994 P.2d 591 (App. 1999).  None of these cases have retained their vitality on the issue of the circuit court's subject matter jurisdiction.  The first five cases (McBryde, Hilo Sugar Co., Shaw, Hill, and In re Taxes Maui Agr. Co.) all involve the old distinction between the regular courts, which could address the illegality of an assessment, and the specialty tax boards and courts, which could not.  See McBryde, 6 Haw. at 530 (holding tax court was without authority to decide whether double taxation was illegal, because double taxation was not among the enumerated issues the tax court was authorized by statute to address); Hilo Sugar Co., 8 Haw. at 150 (holding circuit court "may interfere where the assessment is illegal," but not "to review the judgment of the Assessor in estimating values); Shaw, 14 Haw. at 119 ("In general, questions of judgment and fact are for the assessors and the specially constituted tax courts and questions of constitutionality . . . are for the regular courts."); Hill, 31 Haw. at 812 (holding that a taxpayer could collaterally attack, in circuit court, an updated assessment as an "unauthorized and invalid" exercise of power by the assessor); In re Taxes Maui Agr. Co., 34 Haw. at 551 (holding that the tax courts lacked jurisdiction to determine the validity of an assessment).  In re Taxes of Maui Agr. Co. appears to have been overruled by In re Valley of Temples Corp., 56 Haw. 229, 230-31, 533 P.2d 1218, 1219 (1975), which held, "We hold that In re Taxes Maui Agr. Co., supra, decided in 1938, is no longer applicable authority in the determination of the Tax Appeal Court's jurisdiction in real property tax appeals.  Since 1939 the Legislature has expressly provided that an appeal from a final decision of the Board to the Tax Appeal Court 'shall bring up for determination all questions of fact and all questions of law, including constitutional questions involved in the appeal.' 1939 S.L.H. c. 208, § 7; HRS § 232-17 (Supp. 1974)."  (Emphasis added; footnote omitted).  In re Valley of the Temples Corp. thus implicitly overruled the pre-1938 cases, McBryde, Hilo Sugar Co., Shaw, and Hill, as well.  Similarly, In re Smart, 54 Haw. 250, 505 P.2d 1179, appears to have been superseded by the statute cited in In re Valley of Temples, Corp., HRS § 232-17.  In re Smart held that "where Taxpayer's suit contests the valuation placed upon the real property by the tax assessor rather than the legality of the assessment, we are of the opinion that the language of HRS § 246-46 [requiring appeals of assessments to come before the BOR or TAC] applies exclusively," and remanding the case to the circuit court for dismissal.  54 Haw. at 252, 505 P.2d at 1181.  Lastly, it is true that the Taxpayers' last case, Grace Bus. Dev. Corp. v. Kamikawa, 92 Hawai'i at 669, 994 P.2d at 601 held that "[w]here . . . the dispute is not over the amount of the taxes, but over their basic validity, HRS § 40-35 [which allowed suit in the circuit court] is the avenue for taxpayer relief.  Where the dispute is over the amount of the value or tax assessed, chapter 232 [requiring appeal to the BOR and TAC] appl[ies]."  The case was reversed by this court in Grace Bus. Dev. Corp., 92 Hawai'i 608, 994 P.2d 504, because there was no

(continued. . .)

25

which may be raised initially in a court of original jurisdiction, from challenges to the amount of a valuation or tax, which may not."[14]

_____

(continued . . .)
"actual dispute," since the taxpayers were not assessed any taxes before they brought their challenge to the TAC.

[14]    The Taxpayers also argue that the County "conflates the jurisdictional considerations underlying the Illegality Order and the ["Amended Assessments"] Order; however, we note that the Taxpayers' arguments concerning subject matter jurisdiction as to both aspects of this case are largely the same.  Thus, we treat the issue of the circuit court's subject matter jurisdiction as pertaining to all of the orders and the judgment that are the subjects of this interlocutory appeal.
       We note that the only additional reasons the circuit court gave for exercising jurisdiction over the "amended assessments" counts were that (1) the Taxpayers had made a jury demand in their complaint, FAC, and SAC, and the TAC is not empowered to empanel a jury under HRS § 232-13, and (2) that the circuit court had exercised jurisdiction first.  These reasons do not support an exercise of the circuit court's jurisdiction over this real property tax appeal.
       First, the right to a jury trial presupposes jurisdiction in the circuit court to begin with.  The right alone is not an independent basis for jurisdiction in the circuit courts.  Hawai'i State Constitution article I, section 13 states, "In suits at common law where the value in controversy shall exceed five thousand dollars, the right of trial by jury shall be preserved."  In determining whether a suit is "at common law," the test is "whether the cause of action seeks legal or equitable relief."  In re Marn Family Litig., 141 Hawai'i at 8, 403 P.3d at 628.  Thus, courts look to "the nature of the remedy to determine whether a jury trial is warranted."  Id. Generally, where the remedy requested is legal, there is a right to jury trial; by contrast, where the remedy requested is equitable, there is no right to jury trial.  Id.  In this case, the Taxpayers requested declaratory relief, for which there is generally a right to jury trial.  Id.  However, HRS § 632-1 precludes declaratory relief in tax controversies.  Therefore, there is no relief requested by Taxpayers that would afford them the right to a jury trial in Counts I and V through VII certified for interlocutory appeal.  And although there would also be a right to jury trial under Count VIII, the 42 U.S.C. § 1983 count, liability under that count was based on the circuit court's declaration of federal constitutional violations in other counts over which it lacked subject matter jurisdiction.  Therefore, the right to a jury trial does not provide a basis for subject matter jurisdiction in the circuit court as to the counts before us.
       Second, lack of subject matter jurisdiction can be raised at any point in the proceedings, regardless of whether the circuit court "exercised jurisdiction first."  Questions regarding subject matter jurisdiction "may be raised at any stage of a cause of action. . . .  A judgment rendered by a circuit court without subject matter jurisdiction is void."  Amantiad, 90 Hawai'i at 159, 977 P.2d at 167.

This first point of error concerning the circuit court's subject matter jurisdiction is dispositive of the entire interlocutory appeal.  As a preliminary matter, we note that the Taxpayers consistently sought declaratory relief in their Complaint, FAC, and SAC pursuant to HRS § 632-1.[15]  As further discussed below, declaratory relief under HRS § 632-1 is not available for "any controversy with respect to taxes" that seeks to interfere with the County's authority to assess and collect real property timeshare taxes.  Rather, the Taxpayers should have proceeded through the tax appeal procedures set forth in HRS chapter 232 and MCC chapter 3.48, which require an appeal of assessments to the County BOR and TAC, even for questions

---

[15]    As noted, Taxpayers specifically referenced HRS § 632-1 in their Complaint, FAC, and SAC.  The Taxpayers' initial Complaint requested relief in the form of a declaration that (1) the timeshare classification and tax rate violated the equal protection clauses of the United States Constitution and Hawaiʻi State Constitution, and (2) Maui County Resolution No. 13-60, establishing the fiscal year 2014 real property timeshare tax rate, was void as violative of the Sunshine Law.  The Taxpayers' FAC again requested relief in the form of a declaration that (1) the timeshare classification and tax rates violated the equal protection clauses of the United States and Hawaiʻi Constitutions, and that (2) Maui County Resolution Nos. 13-60 and 14-54, establishing the fiscal year 2014 and 2015 real property timeshare tax rates, respectively, were void as violative of the Sunshine Law, and, therefore, also violated the Taxpayers' procedural due process rights under the United States Constitution and Hawaiʻi State Constitution.  The Taxpayers' SAC again requested relief in the form of a declaration that (1) the real property timeshare classification and fiscal year 2014 and 2015 rates were unconstitutional, (2) the Maui County resolutions establishing the fiscal year 2014 and 2015 real property timeshare tax rates were void as violative of the Sunshine Law and, therefore, violated Taxpayer's procedural due process rights, and that (3) the "amended assessments" were invalid and unenforceable because they violated the Maui County Code; the rights to free speech, to petition the government for redress, and to procedural and substantive due process under the United States Constitution and the Hawaiʻi State Constitution; therefore, the Taxpayers were entitled to refunds of real property taxes and appeal fees paid.

involving the constitutionality or illegality of an assessment.[16] As to Counts I and V through VII certified for interlocutory appeal, we therefore agree with the County that the circuit court lacked subject matter jurisdiction to address the assessments challenged by the Taxpayers in this case. In addition, as Count VIII, the 42 U.S.C. § 1983 count, is dependent on alleged constitutional violations declared in other counts certified for interlocutory appeal, that part of the judgment must be set aside on that basis also.[17]

## 2. HRS § 632-1 precludes declaratory relief in "any controversy with respect to taxes"

We address HRS § 632-1 first. As specially stated in the Complaint, FAC, and SAC, this case was brought seeking

---

[16] We note that equal protection challenges to County tax assessments have come to this court through the County BORs and the TAC. See, e.g., Corboy v. Louie, 128 Hawaiʻi 89, 283 P.3d 695 (2011) (county taxpayer suit alleging denial of exemption from real property taxes equal to the exemption granted to Hawaiian homestead lessees under the Hawaiian Homes Commission Act violated their right to equal protection under the United States Constitution and Hawaiʻi State Constitution, and seeking a refund of real property taxes paid). Similarly, cases like the Taxpayers', challenging County real property tax classifications as illegal or violative of constitutional equal protection, have also come to this court through the County BORs and the TAC. See, e.g., Gardens at West Maui Vacation Club v. Cty. of Maui, 90 Hawaiʻi 334, 978 P.2d 772 (1999) (county taxpayer suit alleging that re-classification of Maui timeshares from "apartment" to "hotel/resort" classification violated equal protection under the United States Constitution and the Hawaiʻi State Constitution); Kinkaid, 106 Hawaiʻi 318, 104 P.3d 905 (county taxpayer suit alleging that re-classification of their residential units from "apartment" to "hotel and resort" was "unlawful"). The legal challenges raised in the Taxpayers' case are of the kind that the TAC is authorized and able to address.

[17] See also infra note 19.

declaratory relief under HRS § 632-1, which provides the

following:

> In cases of actual controversy, courts of record, within the scope of their respective jurisdictions, shall have power to make binding adjudications of right, whether or not consequential relief is, or at the time could be, claimed, and no action or proceeding shall be open to objection on the ground that a judgment or order merely declaratory of right is prayed for; provided that declaratory relief may not be obtained in any district court, or in any controversy with respect to taxes, or in any case where a divorce or annulment of marriage is sought.

(Emphasis added.)

The instant case is a "controversy with respect to taxes."

We recently interpreted that phrase in Tax Foundation v. Hawai'i,

144 Hawai'i 175, 439 P.3d 175 (2019). In that case, the Tax

Foundation brought a complaint for declaratory relief under HRS

§ 632-1. 144 Hawai'i at 181, 439 P.3d at 133. It brought claims

under the Hawai'i State Constitution challenging the Department

of Budget and Finance's practice of retaining, for

administrative costs, a portion of the City and County of

Honolulu's rail surcharge on general excise and use taxes. Id.

The circuit court granted the State's motion to dismiss the

complaint, which asserted, inter alia, that the circuit court

lacked subject matter jurisdiction because HRS § 632-1 prohibits

declaratory relief in any controversy with respect to taxes.

144 Hawai'i at 182, 183, 439 P.3d at 134, 135.

We concluded that the circuit court erred in dismissing the Tax Foundation's complaint for lack of subject matter jurisdiction, because the Tax Foundation's complaint was not a "controversy with respect to taxes" under HRS § 632-1. 144 Hawai'i at 188, 439 P.3d at 140. We explained that the Tax Foundation was not "disput[ing] its liability to pay general excise and use tax, or the Honolulu County surcharge." Id. Rather, it contested "only the 'administration and allocation' of the Honolulu County surcharge after it is assessed and collected." Id. We therefore adopted the holding in Hawai'i Ins. Council v. Lingle, 117 Hawai'i 454, 184 P.3d 769 (App. 2008), that declaratory relief "may be obtained in tax matters under HRS § 632-1 where such relief does not interfere with the assessment or collection of taxes." Id. (emphasis added).

In this case, however, the Taxpayers' Complaint, FAC, and SAC all sought declaratory relief in the form of voiding the County's real property timeshare tax, a result which would "interfere with the assessment or collection of taxes." Therefore, in this case, the Taxpayers' suit is a "controversy with respect to taxes," for which declaratory relief under HRS § 632-1 is not allowed. For that reason, the circuit court lacked jurisdiction over the Taxpayers' suit.

This is not to say that Taxpayers were without recourse in challenging the legality or constitutionality of the real

property timeshare tax classification, rates, or assessments. Their recourse was through the county procedures for appealing tax assessments. We note that the Hawai'i State Constitution, article VIII, section 3 sets forth the counties' authority over real property taxes as follows: "The taxing power shall be reserved to the State, except so much thereof as may be delegated by the legislature to the political subdivisions, and except that all functions, powers and duties relating to the taxation of real property shall be exercised exclusively by the counties, with the exception of the county of Kalawao." (Emphasis added.) HRS chapter 232, titled "Tax Appeals," reinforces the primacy of the tax appeal procedures set forth in County codes like MCC chapter 3.48, titled "Real Property Tax." HRS § 232-3 is titled "Grounds for appeal, real property taxes," and it states that a taxpayer aggrieved by an assessment must show a "[l]ack of uniformity or inequality, brought about by illegality of the methods used or error in the application of the methods to the property involved," HRS § 232-3(2), or "[i]llegality, on any ground arising under the Constitution or laws of the United States or the laws of the State (in addition to the ground of illegality in the methods used, mentioned in [HRS § 232-3(2)]," HRS § 232-3(4). Similarly, MCC § 3.48.605, titled "Grounds -- Real property taxes," provides that a taxpayer aggrieved by an assessment must show:

> B.  Lack of uniformity or inequality, brought about by
> inability [sic] of the methods used or error in the
> application of the methods to the property involved; or
> . . . .
> E.  Illegality, on any ground arising under the
> Constitution or laws of the United States or the laws of
> the State or the ordinances of the County in addition to
> the ground of illegality of the methods used, mentioned in
> subsection B of this section.

In this case, portions of Count I as well as Counts V through VII have been certified for interlocutory appeal.  In Count I, the Taxpayers alleged that the County's real property timeshare tax classification and rates violated the equal protection clauses of the United States Constitution and the Hawai'i State Constitution, because timeshares were taxed at a much higher rate than hotels and resorts, even though the actual use of both classifications of real property was similar. Likewise, Count V sought a declaratory judgment as to the illegality of the "amended assessment," Count VI alleged violations of the right to free speech and the right to petition the government for redress under the United States Constitution and Hawai'i State Constitution, and Count VII alleged a violation of procedural due process under the United States Constitution and the Hawai'i State Constitution.  Also, the attorneys' fees and costs awarded under Count VIII, the 42 U.S.C § 1983 count, were dependent upon the constitutional violations found by the circuit court in other counts; therefore Count VIII was dependent on the rulings regarding unconstitutionality in other

counts, so the award of attorneys' fees and costs must be set aside.[18]  Taxpayers alleged they were not liable for taxes, and they requested and obtained an order from the circuit court ruling the taxes illegal and unconstitutional and ordering a refund of taxes already paid.  Thus, as HRS § 632-1 precludes declaratory judgments for "controvers[ies] with respect to taxes" that "interfere[] with the assessment or collection of taxes," the circuit court lacked subject matter jurisdiction as to Counts and V through VII and as to the liability portion of Count VIII, which was dependent on the other counts.[19]

---

[18]    See also infra note 19.

[19]    With respect to Count VIII asserting a 42 U.S.C. § 1983 violation, we note that in National Private Truck Council, Inc., v. Oklahoma Tax Commission, 515 U.S. 582 (1995), the United States Supreme Court explicitly held as follows:

> In determining whether Congress has authorized state courts to issue injunctive and declaratory relief in state tax cases, we must interpret § 1983 in light of the strong background principle against federal interference with state taxation.  Given this principle, we hold that § 1983 does not call for either federal or state courts to award injunctive and declaratory relief in state tax cases when an adequate legal remedy exists. Petitioners do not dispute that Oklahoma has offered an adequate remedy in the form of refunds. Under these circumstances, the Oklahoma courts' denial of relief under § 1983 was consistent with the long line of precedent underscoring the federal reluctance to interfere with state taxation.

This holding expanded on the Court's previous holding in Fair Assessment in Real Estate Ass'n, Inc. v. McNary, 454 U.S. 100 (1981), in which the Court held that 42 U.S.C. § 1983 does not permit federal courts to award damages in state tax cases when state law provides an adequate remedy. 454 U.S. at 116.

In National, the Court went on to state:

(continued. . .)

33

We note that Taxpayers are not without remedies to obtain the relief they request.  A taxpayer aggrieved by an assessment can appeal to the County BOR under HRS § 232-15 (titled "Appeal to board of review").[20]  The taxpayer can raise questions

---

(continued . . .)

> Of course, nothing we say prevents a State from empowering its own courts to issue injunctions and declaratory judgments even when a legal remedy exists.  Absent a valid federal prohibition, state courts are free to issue injunctions and declaratory judgments under state law. When a litigant seeks declaratory or injunctive relief against a state tax pursuant to § 1983, however, state courts, like their federal counterparts, must refrain from granting federal relief under § 1983 when there is an adequate legal remedy.

515 U.S. at 592.

Based on National and Fair Assessment, some state courts of last resort have held that state courts cannot entertain 42 U.S.C § 1983 claims brought by taxpayers where state law provides an adequate remedy.  See, e.g., Francis v. City of Columbus, 676 N.W.2d 346 (Neb. 2004) (holding that where state law provides an adequate legal remedy, state courts cannot entertain a § 1983 claims); Kowenhoven v. County of Allegheny, 901 A.2d 1003 (Penn. 2006) (holding that taxpayers challenging county assessment practices had adequate state law remedy that precluded claim for § 1983 money damages); Jade Aircraft Sales, Inc. v. Crystal, 674 A.2d 834 (Conn. 1996) (holding that because taxpayer challenging use tax in connection with taxpayer's in-state use of airplane purchased out-of-state had an opportunity to receive an adequate legal remedy, trial court did not have jurisdiction to entertain the § 1983 action); General Motors Corp. v. City of Linden, 671 A.2d 560 (N.J. 1996) (holding in taxpayer case alleging due process violation for alleged discrimination by city in assessing automobile assembly plant, adequacy of state law remedies barred state courts from providing relief under § 1983 for tax claim); and Camps Newfound/Owatonna Corp. v. Town of Harrison, 705 A.2d 1109 (Maine 1998) (requiring dismissal of § 1983 claim brought by taxpayer challenging constitutionality of statute denying property tax exemption for nonprofits operated principally for out-of-state residents because state law provided adequate remedy).

Because this issue was not briefed by the parties, we do not further address this issue at this time.

[20]    HRS § 232-16, titled "Appeal to tax appeal court," allows direct appeals to the TAC, but not where taxpayers are appealing a real property tax assessment.  In appeals from real property tax assessments, the taxpayer "shall first obtain a decision from an administrative body established by county ordinance, prior to appealing to the tax appeal court, if county

(continued. . .)

involving the United States Constitution, which the BOR is not authorized to entertain, but which preserves the issues for a later appeal to the TAC:

> The appeal shall be considered and treated for all purposes as a general appeal and shall bring up for determination all questions of fact and all questions of law, excepting questions involving the Constitution or laws of the United States, necessary to the determination of the objections raised by the taxpayer in the notice of appeal.  Any objection involving the Constitution or laws of the United States may be included by the taxpayer in the notice of appeal and in such case the objections may be heard and determined by the tax appeal court on appeal from a decision of the board of review; but this provision shall not be construed to confer upon the board of review the power to hear or determine such objections.

HRS § 232-15 (emphasis added).  See also MCC § 3.48.625 ("The [BOR] shall have the power and authority to decide all questions of fact and all questions of law, excepting questions involving the Constitution or laws of the United States, necessary to the determination of the objections raised by the taxpayer . . . in the notice of appeal; provided, that the [BOR] shall not have power to determine or declare an assessment illegal or void. . . .").

A taxpayer dissatisfied with the decision of the County BOR may appeal to the TAC, at which time the constitutional questions can be addressed:

---

(continued . . .)
ordinance requires a taxpayer to do so."  In this case, MCC § 3.48.595 is a county ordinance requiring a taxpayer to "first appeal to the County board of review, pursuant to section 232-16, Hawaii Revised Statutes."

> An appeal shall lie to the tax appeal court from the decision of a state board of review, or equivalent administrative body established by county ordinance. . . . . The appeal shall bring up for determination all questions of fact and all questions of law, <u>including constitutional questions involved in the appeal</u>.

HRS § 232-17 (Emphasis added.)  The TAC "shall have the power and authority. . . to decide all questions of fact and all questions of law, including constitutional questions, involved in any such matters, without the intervention of a jury."  HRS § 232-11; <u>see also</u> HRS § 232-13 ("[T]he [tax appeal] court shall determine all questions of fact and all questions of law, including constitutional questions, involved in the appeal."). <u>See also</u> MCC § 3.48.655 ("The appeal [to the TAC] shall be considered and treated for all purposes as a general appeal and shall bring up for determination all questions of fact and all questions of law, excepting questions involving the Constitution or laws of the United States, necessary for the determination of the objections raised by the taxpayer in the notice of appeal. Any objection involving the Constitution or laws of the United States may be included by the taxpayer in the notice of appeal, and in such case, the objections may be heard and determined by the tax appeal court on appeal from a decision of the board of review.").  Appeals of TAC decisions go to the ICA (HRS § 232-19), then on to this court (HRS § 602-59), for further review of any constitutional rulings.  Contrary to the Taxpayers' assertions, the circuit court was without authority

to exercise general jurisdiction over this matter, where doing so was precluded by HRS chapter 232 and MCC chapter 3.48.

In short, the circuit court lacked subject matter jurisdiction over the Taxpayers' challenges to their real property tax assessments, because (1) they raised a "controversy with respect to taxes" under HRS § 632-1, which the circuit court was not authorized to entertain, and (2) HRS chapter 232 and MCC chapter 3.48 provided the process by which Taxpayers could bring their challenges to the legality and constitutionality of the real property timeshare tax classification and rates.

**B.    The parties' stipulation and order was properly disapproved, and the County's motion for partial dismissal of this appeal was properly denied.**

The parties asked this court to order the circuit court to vacate certain of its orders and its judgment, related to the "amended assessments" counts solely due to their partial settlement of the "amended assessments" points of error.  Had this court so acted, the circuit court would have vacated the very order containing its erroneous assertion of subject matter jurisdiction, before this court would have had a chance to review it.[21]

---

[21]    See text accompanying note 9 as well as supra note 5.

Moreover, there are grave concerns posed by adopting a process by which an appellate court, based solely on settlement of the parties on appeal, approves a stipulation to dismiss an appeal, where the parties' end goal is vacating a trial court's orders or judgments. This process, known as a "stipulated reversal" or "stipulated vacatur" was discussed in <u>Neary v. Regents of Univ. of California</u>, 834 P.2d 119, 131 (Cal. 1992). In that case, the California Supreme Court held that its "appellate courts have the legal authority to reverse (or otherwise vacate) a trial court's judgment when the parties stipulate to such action as a condition of a proposed settlement pending appeal," absent a showing of extraordinary circumstances. <u>Neary</u>, 834 P.2d at 120, 125. The <u>Neary</u> court supported its holding with the following policy pronouncements: (1) settlement agreements are highly favored, and even a post-judgment settlement will spare the parties, as well as the judiciary, future expenditures of time and money; (2) denying a stipulated reversal is unfair to the parties as it does not carry out their interests in ending litigation; and (3) trial court judgments can be reversed or vacated by stipulation, as trial court judgments are not binding authority in any event. 834 P.2d at 121-25.

The dissent in <u>Neary</u> presented the following policy reasons against adopting the stipulated reversal procedure: (1)

38

stipulated reversals erode public confidence in the judiciary due to the perception that a party with enough financial means can "purchase the nullification of the adverse judgment"; (2) stipulated reversals discourage pretrial settlements; (3) trial court judgments should be preserved for their public value; (4) parties should not be allowed to dictate an appellate courts' actions.  Neary, 834 P.2d at 127-33 (Kennard, J., dissenting).

The Neary decision has been roundly criticized by legal scholars.  See, e.g., Judith Resnik, Whose Judgment?  Vacating Judgments, Preferences for Settlement, and the Role of Adjudication at the Close of the Twentieth Century, 41 UCLA L. Rev. 1471 (1994); Steven R. Harmon, Unsettling Settlements: Should Stipulated Reversals be Allowed to Trump Judgments' Collateral Estoppel Effects Under Neary, 85 Cal. L. Rev. 479 (1997); Daniel Purcell, The Public Right to Precedent:  A Theory and Rejection of Vacatur, 85 Cal. L. Rev. 867 (1997); Michael W. Loudenslager, Erasing the Law:  The Implications of Settlements Conditioned upon Vacatur or Reversal of Judgments, 50 Wash. & Lee L. Rev. 1229 (1993).  One scholar highlighted the "tangible but frequently undetectable social costs" of allowing courts to consider vacaturs based solely on the parties' settlement during the pendency of an appeal:

> These costs include the public cost of forgoing the collateral estoppel and res judicata effects of the prior judgment.  This cost is borne directly by third party

39

litigants but shared by the public interest in preventing duplicative and piecemeal litigation.  The costs also include the erasure of collateral consequences of an adverse judgment, the loss of precedential value for judicial decisions, and a diminished respect for the judicial process.  Moreover, rather than encouraging the settlement process, a judicial rule encouraging routine grants of vacatur disrupts the process.  A procedure which allows parties to obtain vacatur as a matter of right by conditioning a postjudgment settlement on vacatur will encourage parties to delay settlement until after trial because the effects of an adverse judgment can be avoided at little or no cost by postjudgment settlement.  The procedure will also permit the prevailing party to obtain as a private windfall the public costs of vacatur, and will place the defense of the integrity of judicial decisions in the hands of litigants who are not in a position to safeguard the public values inherent therein.

Accordingly, the settlement of a case pending appeal should not entitle the litigants to vacatur as a matter of right.  Rather, the courts should review motions to vacate with the presumption that vacatur is not an appropriate tool for erasing an unfavorable trial court decision.  The standard motion to vacate after a postjudgment settlement, motivated solely by the losing party's desire to avoid the collateral consequences of that judgment, should be routinely denied.  Though the litigants should retain the opportunity to persuade the court that there is particular prejudice in an individual case, such as the unfairness presented by the Munsingwear[22] doctrine, the litigants should bear the burden of convincing the court that this dilemma is not of their own making.  Absent such a showing, the judgment in a case which has been resolved through settlement should enjoy the same vitality as that in any other case in which the losing litigant chooses not to appeal.

Jill E. Fisch, Rewriting History:  The Propriety of Eradicating Prior Decisional Law Through Settlement and Vacatur, 76 Cornell L. Rev. 589, 641-42 (1991) (emphasis added).

The United States Supreme Court rejected the stipulated reversal process for federal courts in U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship, 513 U.S. 18 (1994).  One commentator

---

[22]    See United States v. Munsingwear, 340 U.S. 36, 39-40 (1950) (allowing an appellate court to vacate or reverse a trial court judgment during the pendency of an appeal when the case is mooted through "happenstance").

characterized Bancorp as "having dealt perhaps the most significant blow to Neary" without even mentioning it by name. Harmon, Unsettling Settlements, 85 Cal. L. Rev. at 481. In Bancorp, the United States Supreme Court addressed "whether appellate courts in the federal system should vacate civil judgments of subordinate courts in cases that are settled after appeal is filed or certiorari sought." Bancorp, 513 U.S. at 19. In other words, the issue was "whether courts should vacate where mootness results from a settlement." 513 U.S. at 23. The Bancorp court answered in the negative:

> We hold that mootness by reason of settlement does not justify vacatur of a judgment under review. This is not to say that vacatur can never be granted when mootness is produced in that fashion. As we have described, the determination is an equitable one, and exceptional circumstances may conceivably counsel in favor of such a course. It should be clear from our discussion, however, that those exceptional circumstances do not include the mere fact that the settlement agreement provides for vacatur —- which neither diminishes the voluntariness of the abandonment of review nor alters any of the policy considerations we have discussed. Of course even in the absence of, or before considering the existence of, extraordinary circumstances, a court of appeals presented with a request for vacatur of a district-court [sic] judgment may remand the case with instructions that the district court consider the request, which it may do pursuant to Federal Rule of Civil Procedure 60(b).

Bancorp, 513 U.S. at 25 (emphasis added). In terms of policy considerations against vacatur following settlement on appeal, the Bancorp court noted, "Where mootness results from settlement . . . the losing party has voluntarily forfeited his legal remedy by the ordinary processes of appeal or certiorari, thereby surrendering his claim to the equitable remedy of

vacatur." Bancorp, 513 U.S. at 25. The Court continued, "To allow a party who steps off the statutory path to employ the secondary remedy of vacatur as a refined form of collateral attack on the judgment would -- quite apart from any consideration of fairness to the parties -- disturb the orderly operation of the federal judicial system." Bancorp, 513 U.S. at 27.

Thus, Bancorp strongly discouraged stipulated vacaturs and reversals based solely on settlement on appeal. The Bancorp court, however, retained an exception to this rule, previously articulated in dictum in Munsingwear, 340 U.S. 36, that "mootness by happenstance provides sufficient reason to vacate." Bancorp, 513 U.S. at 25 n.3. Happenstance includes circumstances unattributable to any of the parties, and it does not include settlement, which the parties enter into voluntarily. Bancorp, 513 U.S. at 23-27.

In Goo, this court generally adopted the United States Supreme Court's holding and policy reasons[23] from Bancorp, 531 U.S. at 29, that "mootness by reason of settlement does not

_____

[23] Goo also noted a further undesirable unintended consequence of allowing parties to stipulate to vacatur after settlement on appeal as follows: "This practice had led to a situation where 'repeat litigants,' such as insurance companies, were settling cases after losing at the trial level against 'one-time litigants,' such as policy-holders, but only on the condition that judgments adverse to the interests of the repeat litigant were vacated," thus enabling insurance companies to "eradicate or reduce the number of pro-policy holder decisions and then argue that the weight of authority [was] in their favor." Id. (citation omitted, brackets in original).

justify vacatur of a judgment under review." See Goo, 132 Hawai'i at 314-15, 321 P.3d at 665-66. Goo characterized Bancorp as holding "that appellate courts could no longer vacate lower court judgments based solely on a settlement agreement, which represents a voluntary abandonment of the right to appellate review, absent 'exceptional' or 'extraordinary' circumstances." 132 Hawai'i at 314, 321 P.3d at 665.[24]

Goo went on, however, to observe that where a fact-intensive inquiry is required in order to determine, in the first instance, whether mootness on appeal was the result of happenstance or a party's voluntary action, then it is appropriate for the appellate court to remand the case to the trial court for its evaluation. 132 Hawai'i at 317-18, 321 P.3d at 667-68.[25] Under those circumstances, Goo held, "[W]hen a case

_____

[24] Respectfully, the dissent therefore misapprehends the holding of Goo when it states "this court . . . examined this issue . . . and . . . concluded that, when parties to a case on appeal seek vacatur of the trial court's order pursuant to settlement, the appropriate course is to remand the case so that the trial court may consider the equities of the motion for vacatur."

[25] In Goo, real property developers had had their preliminary plat approval rescinded after Maui County changed its height restriction ordinance. 132 Hawai'i at 307, 321 P.3d at 659. The developers then met privately with the Maui mayor and secured his permission to continue developing the project. Id. Neighboring homeowners then successfully sued the developers, the mayor, and the county planning director seeking declaratory and injunctive relief requiring the county to enforce the new height restriction ordinance. 132 Hawai'i at 308, 321 P.3d at 659. Upon the denial of their motion for attorney's fees, the homeowners appealed to the ICA. 132 Hawai'i at 309, 321 P.3d at 660. On appeal, the case was mooted when the Maui County Council passed an ordinance essentially grandfathering in the development at its planned height, as part of a "global settlement" of various lawsuits concerning the new height restriction ordinance. 132 Hawai'i
(continued. . .)

becomes moot on appeal and the trial court has not had an opportunity to evaluate a motion for vacatur, the appellate court, in the absence of exceptional circumstances, should remand the case to the trial court to give the court the first opportunity to evaluate the cause of the mootness based on a complete record" instead of the appellate court itself vacating the judgment. 132 Hawai'i at 317, 321 P.3d at 668. Goo did not in any way preclude an appellate court from declining a request to vacate a trial court judgment. Goo's further statement, that "when a case is mooted while on appeal, the appellate court should, absent exceptional circumstances, remand the case to the trial court for a consideration of the vacatur issue,"[26]

_____

(continued . . .)
at 310, 312, 321 P.3d at 661, 663. The developers persuaded the ICA to vacate the circuit court's judgment due to mootness. 132 Hawai'i at 311, 321 P.3d at 662. On certiorari, this court vacated the ICA's judgment and remanded the case to the circuit court to determine whether vacatur of its order was appropriate, because it was unclear whether mootness occurred by happenstance or through the voluntary action of a party (the County). 132 Hawai'i at 318, 321 P.3d at 669.

In this case, no fact-intensive inquiry is required, as this settlement was the result of the parties' voluntary action. The dissent would instead presumptively allow remands for the trial court to consider the equities of vacatur even without circumstances requiring a fact-intensive inquiry.

[26] The context of this sentence in Goo differs from the dissent's characterization. Goo stated that where a fact-intensive inquiry is required in order to determine whether mootness on appeal was the result of happenstance or a party's voluntary action, then it is appropriate for the appellate court to remand the case to the trial court for its evaluation. 132 Hawai'i at 317-18, 321 P.3d at 667-68. The dissent would instead make remand for trial court consideration of the equities of vacatur the presumption rather than the exception. We disagree with the dissent's assertion that "the trial court is best equipped to make the equitable determination of whether vacatur is appropriate." Respectfully, this court's function and role differs from that of trial courts. This court's "jurisdiction and powers" include "mak[ing] . . . such . . . mandates and
(continued. . .)

similarly applies only where the cause of mootness on appeal is unclear and the inquiry into it fact-intensive and the appellate court has concluded that vacatur may be an appropriate disposition in the case. In short, Goo held that mootness solely by reason of settlement does not justify vacatur of a judgment under review, but, where the cause of mootness is unclear (i.e., whether it is the result of happenstance or some voluntary action of a party or parties), remand to the trial court for its evaluation is appropriate. Goo, 132 Hawai'i at 314-15, 317, 321 P.3d at 665-66, 668. The instant case represents a clear example of mootness on appeal solely by reason of the voluntary settlement of the parties; therefore, remand to the circuit court for its evaluation of vacatur was not necessary or desirable. Rather, disapproval of the parties' stipulation and order, and the County's motion for partial dismissal, were appropriate.

## V. Conclusion

For the foregoing reasons, the circuit court lacked subject matter jurisdiction over the Taxpayers' challenges to their real

---

(continued . . .)
tak[ing] such other steps . . . for the promotion of justice . . . ." HRS § 602-5(a)(6). The Neary dissent cited above by former Justice Joyce Kennard of the California Supreme Court, who served on that court for thirty-five years, succinctly explains why the "promotion of justice" dictates against procedures that facilitate stipulated reversals.

property timeshare tax assessments.  We therefore vacate the

orders and judgment giving rise to this interlocutory appeal and

remand this case to the circuit court for further proceedings

consistent with this opinion.

Brian A. Bilberry                    /s/ Sabrina S. McKenna
for appellants

                                     /s/ Richard W. Pollack

Robert G. Klein
(Lisa W. Cataldo,                    /s/ Michael D. Wilson
Becky T. Chestnut,
Kurt W. Klein, and
David A. Robyak,
with him on the briefs)
for appellees

Thomas Yamachika
for amicus curiae
Tax Foundation of Hawai'i


